FREDERICKA HOMBERG WICKER, Judge.
| .Defendant, Errol Falcon Jr., now appeals his convictions on nine counts of possession of stolen things valued over $500 in violation of La. R.S. 14:69. Defendant argues the trial court erred in denying his motion to suppress the evidence first, because the warrant, pursuant to which that evidence was found, was not based on probable cause, and second, because the detectives who executed the search warrant exhibited a flagrant disregard for the warrant’s particular description of what was to be seized. For the following reasons, we find defendant’s argument to be without merit and affirm his convictions and sentences.

PROCEDURAL HISTORY

On October 16, 2009, the trial court issued a warrant authorizing the search of defendant’s home and the seizure of particular items therein which detectives believed defendant had stolen from the Walmart in Boutte. Detectives thereafter ^searched defendant’s home and seized various items which were not particularly described in the warrant. On February 11, 2010, a grand jury indicted defendant on nine counts of illegal possession of stolen things in violation of La. R.S. 14:69. Each count of the indictment alleged defendant illegally possessed various corporeal movables stolen from a specific victim. None of the items listed in the indictment *81 were items listed in the search warrant. Defendant filed three motions to suppress before pleading guilty on these charges.

Three Motions to Suppress

Defendant filed his first motion to suppress evidence on January 21, 2010. The trial court held a hearing on this motion on October 20, 2010. Thereafter, at a hearing on November 17, 2010, the trial court denied defendant’s first motion to suppress.
Also at the November 17, 2010 hearing, the trial court found that a video disc which contained a recording of defendant’s visit to the Walmart on December 13, 2009 was now available. The trial court ordered the state to turn over that video disc to defendant. The trial court reserved for defendant the right to file a second motion to suppress evidence, if defendant felt the December 13, 2009 recording contradicted the testimony at the hearing on the first motion to suppress.
On December 1, 2010, defendant sought a supervisory writ on the trial court’s denial of his first motion to suppress. This Court denied defendant’s writ application on February 24, 2011, stating:
[b]ased upon the showing made, we do not find the trial court erred in denying Relator’s Motion to Suppress. We conclude there was sufficient probable cause within the search warrant application to justify the issuance of the search warrant for the residence, and there was no need for a good faith exception to apply to this circumstance. Relator has an adequate remedy on appeal in the event of a conviction. Accordingly, the writ is denied.
State v. Errol Falcon, Jr., 11-29 (La.App. 5 Cir. 1/10/11) (unpublished writ).
[ 4After this Court denied defendant’s writ application, defendant sought review of the trial court’s denial of his first motion to suppress by the Louisiana Supreme Court; the Supreme Court denied defendant’s writ application on April 25, 2011. State v. Errol Falcon, Jr., 11-625 (La.4/25/11) (unpublished writ).
On June 15, 2011, defendant filed a second motion to suppress evidence.[1] In it, defendant argued that the evidence against him should be suppressed because “the Sheriffs Office seized nearly 1,000 items from the defendant’s residence during the search it conducted,” the seizure disregarded the terms of the search warrant “and was nothing more than a pretex-tual search for property for which the Sheriffs office had no probable cause.” On June 23, 2011, the trial court denied defendant’s second motion to suppress evidence without a hearing or accepting new evidence, finding that defendant had not raised any new issues which defendant did not have the opportunity to raise on his previous motion to suppress.
On July 5, 2011, the trial court heard defendant’s motion for a subpoena duces tecum. Defendant sought to compel the state to bring the seized items that formed the basis of his prosecution into court. At this hearing, the district attorney admitted that there were many items seized by the state which had not been returned to victims, which may belong to defendant. The trial court denied defendant’s motion.
Defendant filed a third motion to suppress, arguing the court should suppress a statement he made to Captain Madere in which he admitted that stolen items were stored in his residence. On July 7, 2011, *82 the trial court held hearing on | r,defendant’s third motion to suppress. After taking testimony from Captain Mad-ere, the trial court denied this motion.[2]

Guilty Plea and Sentencing

After this denial of his third motion to suppress, defendant informed the court he ■wished to pled guilty. The trial court advised defendant of his rights under Boy-kin. Thereafter, defendant pled guilty, as charged, to the nine counts of possession of stolen things valued at five hundred dollars or more. Defendant made this plea pursuant to Crosby, reserving his right to appeal the denial of his motion to suppress.[3] The trial court accepted defendant’s guilty plea.
On July 20, 2011, the trial court sentenced defendant to “ten years on the first two counts, to run consecutively, and then ten years on the remaining seven count [sic], to run concurrently” with the Department of Corrections. Defense counsel objected to this sentence and moved for the court to reconsider the sentence. The trial court denied defendant’s motion to reconsider his sentence.
On October 28, 2011, the state filed a motion to reduce defendant’s sentence. In it, the state argued defendant’s sentence should be reduced by three to five years because defendant had assisted the state by testifying in the trial of Joseph Austin. The trial court granted the state’s motion and reduced defendant’s sentence, stating:
at this time, I’m going to go with the recommendation of the state and reduce Mr. Falcon’s sentence. So the minutes will reflect that Mr. Falcon is sentenced to 15 years with the Department of Corrections rather than the original 20 years.
|fiAt a later hearing, the trial court amended the minutes to reflect Mr. Falcon’s sentence was “five years on count one, ten years on count two, to run consecutive. And ten years on count [sic] three through nine to run concurrent with one and two.”

Additional Procedural History

On December 19, 2011, defendant filed a motion for return of seized property. This was a joint motion on behalf of defendant, Ms. Tracie Wright, and defendant’s father, Errol Falcon, Sr. At the hearing on this motion on March 27, 2012, movants’ counsel argued that they were entitled to the return of the seized property still possessed by the sheriffs office, which was not returned to victims or otherwise identified as stolen. Movants’ counsel also complained that while the Sheriffs Office had returned property belonging to Mr. Falcon Sr., it would not return his son’s property to him. This was problematic because his son, defendant, was incarcerated and could not retrieve the property himself. The trial court granted this motion at the hearing and later confirmed its decision in a written judgment issued on April 27, 2012.
*83 On August 2, 2012, defendant filed an application for post-conviction relief in the trial court seeking an out-of-time appeal. At a hearing on September 19, 2012, the trial court granted defendant’s application for post-conviction relief and appeal. This is defendant’s direct appeal from the above described convictions.

FACTS

The facts relevant to defendant’s assignments of error were developed on October 20, 2010, at the hearing on defendant’s first motion to suppress, by exhibits and the testimony of Detective Jody Fahrig, Casey Oncale, and Detective Jeremy Pitchford.
17Detective Jody Fahrig, of the St. Charles Parish Sheriffs Office’s Criminal Investigation Bureau, testified that she and Det. Pitchford began a physical surveillance of defendant on December 11, 2009. Det. Fahrig testified she and Det. Pitchford began this surveillance in connection with their investigation into a series of burglaries, not because they suspected defendant was shoplifting at Walmart. Det. Fahrig did not believe that she had the probable cause for a search warrant on December 11, 2009.
During this surveillance, Det. Fahrig observed a vehicle of interest travel to the Walmart store in Boutte. On December 11, 2009, Det. Fahrig contacted Casey On-cale, an asset protection manager at the Walmart, regarding this vehicle. Ms. On-cale informed Det. Fahrig that the vehicle belonged to her subordinate, Ms. Wright, and that Ms. Wright was defendant’s girlfriend. Ms. Oncale then also informed Det. Fahrig that she believed defendant and Ms. Wright were working together to steal from Walmart during the shifts Ms. Wright was working in asset protection.
On December 13, 2009, Det. Fahrig observed defendant drive to the Walmart in Boutte, walk inside at approximately 10:00 p.m., and leave around fifty minutes later. When defendant left, Det. Fahrig did not observe him carrying any items, nor did she observe any items protruding from the pouch on the hoodie defendant was wearing. Det. Fahrig testified that she also did not see defendant place anything into his vehicle after he came out of the store that night. Det. Fahrig admitted that when she saw defendant leave the store that night, she had no idea if defendant had stolen from the store.
After leaving the Walmart that night, defendant drove home. Det. Fahrig followed him. Defendant did not make any stops on his way home and did not throw any items out of his vehicle’s window. Det. Fahrig observed defendant |sarrive at his home, exit his vehicle, and go inside. During her surveillance that night, Det. Fahrig did not observe defendant with any of the items that were later listed in the search warrant.
On December 14, 2009, Det. Fahrig contacted Ms. Oncale regarding defendant’s visit to the Walmart on the previous night. Ms. Oncale subsequently reviewed the video recording on the Walmart’s security camera system from the time of defendant’s visit. Ms. Oncale reported back to Det. Fahrig that she had observed a series of actions by defendant where he removed items from the shelves and carried them into areas of the store which were not viewable by the store’s security cameras. Ms. Oncale also reported that she observed defendant leave the Walmart -without paying for any items. Ms. Oncale explained to Det. Fahrig that the areas of the store not viewable by its security cameras were only known to the upper level members of management and the store’s asset protection managers, such as her and Ms. Wright.
*84 Det. Fahrig testified that Ms. Oncale further reported to her that, after watching the video recording of defendant in the store, Ms. Oncale had gone to the areas of the store out of the view of the store’s security camera system to which defendant went on the night of December 18, 2009. There, Ms. Oncale reported that she found empty packaging from items consistent with the items she saw defendant take from the shelves.
Det. Fahrig testified that after receiving this report, she then traveled to Ms. On-cale’s office in the Walmart and personally viewed the video recording from the night of December 13, 2009 on the store’s security camera system. Det. Fahrig testified that this viewing of the video in Ms. On-cale’s office was the first time that |9she had seen the video recording.[4] At some point after Det. Fahrig took Ms. Oncale’s statement and viewed the store’s security camera recording in Ms. Oncale’s office, she received the video disc recording that was admitted as State’s Exhibit One. Det. Fahrig confirmed that the videos she viewed in Ms. Oncale’s office showed what Ms. Oncale described them as showing.
Det. Fahrig testified that she applied for a search warrant to search defendant’s home based on: her observation on the night of December 13, 2009 of defendant’s trip to the Walmart; her viewing of the store’s security camera footage from that night; and Ms. Oncale’s report of the empty packaging she found.
Det. Fahrig testified that the warrant was issued on December 16, 2009, and that it allowed the police to search for items that Det. Fahrig believed were stolen from the Walmart, namely, Blu-Ray DVDs, a Sony Playstation controller, several packages of printer ink, a Canon printer ink and paper package, a bottle of cologne, and two packages in the pharmacy section.[5]
Det. Fahrig testified that she executed this search warrant and searched defendant’s residence with Det. Pitchford, Det. Madere, Det. Smith, Det. Duhurst, Det. Brass, and other officers. Det. Fahrig testified that, when they executed this search warrant, they did not initially bring a van with them to contain the seized items.
Det. Fahrig authenticated State’s Exhibit One as the disc that Ms. Oncale provided her which contained a video recording from the store’s security camera system.
| inCasey Oncale, an Asset Protection Coordinator at the Walmart in Boutte, testified that she had previously been Ms. Wright’s supervisor. Ms. Oncale testified that she and Ms. Wright performed their job in an office at the Walmart that was accessible only to themselves and other salaried or managerial employees; the office was not accessible to the general public. Ms. Oncale also testified that the Walmart had about one hundred and fifty security cameras. She testified that those cameras did not record video of every area in the Walmart; there were certain “dead” areas which were not recorded. Ms. On-cale testified that only asset protection associates, such as she and Ms. Wright, and other salaried or managerial employees, would know which areas were recorded and which areas where not.
Ms. Oncale also testified that other employees often saw defendant inside the *85 Walmart when he was waiting for Ms. Wright to finish her shift. Ms. Oncale had been investigating defendant’s trips to the Walmart before being contacted by Det. Fahrig because of reports by other Wal-mart employees that defendant was acting suspiciously during his visits.
Ms. Oncale testified that she communicated with Det. Fahrig on December 14, 2009, and that as a result of that communication she retrieved the Walmart’s security camera video showing defendant during his time at the Walmart on the previous night. Ms. Oncale testified that the Wal-mart’s cameras showed defendant go from areas viewable by the cameras, to the un-viewable or “dead” areas.
Describing what she saw, Ms. Oncale testified that she first observed defendant in the Walmart’s electronics area near the Blu-ray DVDs. Defendant chose two DVDs from the shelf, and then walked out of the view of the security cameras, into the picture frame aisle. Ms. Oncale next observed defendant come back into view, take Playstation controllers, and then walk to an area in the shoe department not visible by the cameras. The video next showed defendant in the |n pharmacy selecting an over the counter medicine, then moving into areas of the store’s tire, lube, and automotives department which were not visible to the store’s security system.
Ms. Oncale testified that, on the next day, she searched the un-viewable areas of the picture frame aisle and the shoe department. In the picture frame aisle, she found the empty packages of two DVDs underneath the shelves in the picture frame aisle. In the shoe department area, she found the empty packages of Playstation controllers and an empty box of over-the-counter medicine.
Ms. Oncale testified about a week after she found the empty packaging of these items that she scanned them, created a “training receipt” showing what she had found, and returned the packaging to the store’s return center. Ms. Oncale testified that she prepared this “training receipt” to mark the items as stolen and so that she would have dollar values of what was taken. Ms. Oncale testified that this was her regular practice for packaging she found from items she suspected had been stolen. Ms. Oncale testified that she gave the information she obtained by scanning the found packaging to Det. Fahrig.[6]
After hearing Ms. Oncale’s testimony regarding the video recording of defendant on the night of December 13, 2009, the trial court played the video disc recording admitted as State’s Exhibit One. However, as Ms. Oncale watched this video, discrepancies emerged between what Ms. Oncale remembered viewing and what the recorded video on State’s Exhibit One showed. Furthermore, beyond the recording’s content, State’s Exhibit One also displayed a date stamp indicating a date before December 13, 2009.
As Ms. Oncale watched the video contained on State’s Exhibit One, she observed that while it was a recording by the Walmart’s security camera system 112depicting defendant in the Walmart, the video did not contain recordings that she remembered, namely: defendant with items in his arms; defendant in the Wal-mart’s pharmacy section; or of defendant selecting two DVDs in the electronics section. Additionally, and contrary to her previous testimony, this video showed defendant enter the Walmart’s sporting goods section.
*86 Furthermore, Ms. Oncale admitted that the video contained on State’s Exhibit One bore a date stamp of November 17, 2009. While Ms. Oncale originally tried to explain away this discrepancy by stating that the wrong date could have been caused by a power failure or by a person changing the date on the video recording system, Ms. Oncale later conceded that those were not possible reasons why a video recording from December 13, 2009 would display a date of November 17, 2009. Ms. Oncale also admitted that, in order to make the video disc recording that was State’s Exhibit One, she had to enter a date into the Walmart’s computerized security camera system to retrieve video from that date.
For these reasons, Ms. Oncale concluded State’s Exhibit One was not a recording of defendant’s visit to the Walmart on the night of December 13, 2009. Rather, Ms. Oncale believed that State’s Exhibit One was, in fact, a recording of defendant on November 17, 2009. Ms. Oncale then specifically testified that the video watched in the court that day was not the same video she and Det. Fahrig watched in her office.
Regarding her transfer of State’s Exhibit One to Det. Fahrig, Ms. Oncale testified that the description on the video file, showing that it was last modified on December 19, 2009, meant that was the date she copied Walmart’s video recording from the computerized security camera system on to the disc.[7] Although Ms. Oncale at first testified that she gave two video recordings to Det. Fahrig, in 113response to questioning by the court, Ms. Oncale changed her testimony. Ms. Oncale testified that she may not have actually burned a second video or given a second physical video disc to Det. Fahrig; Ms. Oncale testified that she may have simply shown another video to Det. Fahrig.[8] Ms. Oncale eventually concluded that she had never copied the video recording of defendant’s December 13, 2009 trip to the Walmart to a disc and given that disc to Det. Fahrig. At the request of the court, Ms. Oncale then left the courtroom in order to go to the Wal-mart to search for a recording of defendant’s trip to the Walmart on the night of December 13, 2009.
The trial court next heard the testimony of Detective Pitchford, a detective with the St. Charles Parish Sheriffs Office. Det. Pitchford confirmed that he and Det. Fah-rig were conducting an on-going surveillance of defendant when, on the night of December 13, 2009, they viewed defendant make a trip to the Walmart in Boutte. When defendant entered the Walmart, he and Det. Fahrig stayed in their vehicle. Det. Pitchford testified that he did not personally observe defendant exit the Wal-mart that night because of the position in which the detectives’ vehicle was parked.
Det. Pitchford also confirmed that, based on the information he received during his surveillance of defendant with Det. Fahrig, he applied for, and was granted, a search warrant to search defendant’s *87 home.[9] Det. Pitchford testified that Det. Fahrig had told him that she viewed the Walmart’s security camera video recordings of December 13, 2009 from the Wal-mart’s computerized security j14 earner a system, not from recorded discs. Det. Pitchford admitted that he did not independently verify with Ms. Oncale the information that Det. Fahrig claimed that Ms. Oncale gave to her before he wrote that information in his search warrant application.
After the state rested their case, the trial court received information from Ms. Oncale that she had located the recording of defendant’s December 13, 2009 trip to the Walmart. Defense counsel objected to the re-opening of the proceeding and the introduction of this new video, arguing it was irrelevant. The trial court agreed and did not allow the state to re-open its case.
At the close of the October 20, 2009 hearing, the trial court concluded that the warrant application at issue was based on what Det. Fahrig and Det. Pitchford had personally observed, as well as video that Det. Fahrig observed in Ms. Oncale’s office on December 14, 2009.
The trial court found that the warrant application was not based on two discs containing video recordings that were at issue in the suppression hearing. First, as to the video disc that was introduced as State’s Exhibit One, the court found that it was provided to the detectives by Ms. On-cale and was a recording of something other than the video Det. Fahrig had observed in Ms. Oncale’s office. Second, the trial court found that the detectives also did not base their warrant application on a different video disc which Ms. Oncale claimed she found on the day of the suppression hearing. The trial court found that both discs were made after Det. Pitchford had applied for the search warrant.

DISCUSSION

Defendant now appeals his conviction on nine counts of possession of stolen things valued at or over $500 in violation of La. R.S. 14:69. In his counseled appellate brief, defendant argues the trial court erred in denying his motion to | ^suppress evidence because the search warrant justifying the search of his residence was not validly issued because the detectives lacked probable cause. In his pro se appellate brief, defendant reasserts these arguments, but also argues that the seizure of a thousand or more items from his home during the officer’s search of his home exhibited a flagrant disregard for the terms of the search warrant and that the search was therefore unauthorized. We will treat each of these as separate assignments of error.

Assignment One

As to the first assignment of error, we recognize defendant has already applied for writs of supervisory review of this denial both to this Court and to the Louisiana Supreme Court. Both applications were denied.
Under the doctrine of “law of the case,” an appellate court will generally refuse to reconsider its own rulings of law on a subsequent appeal in the same case. State v. Pettus, 11-862 (La.App. 5 Cir. 5/22/12), 96 So.3d 1240 (citation omitted). The law of the case doctrine is discretionary. Id. Reconsideration of a prior ruling is warranted when, in light of a subsequent trial record, it is apparent that the deter *88 mination was patently erroneous and produced unjust results. Id.
Upon our review of this denial by the trial court, we find no reason now to disturb the trial court’s finding. No new evidence calling into question the probable cause of the officer to obtain the warrant has been admitted and no further proceedings suggest that our determination of defendant’s writ application was patently erroneous or produced unjust results.
Furthermore, defendant’s argument fails on its merits. When evidence is seized pursuant to a search warrant, the defendant bears the burden of proof at a hearing on his motion to suppress that evidence. See La.C.Cr.P. art. 703(D); State v. Johnson, 08-265 (La.App. 5 Cir. 8/19/08), 994 So.2d 595, 599. The trial court 11fiis afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of its discretion. State v. Clement, 11-1150 (La.App. 5 Cir. 9/11/12), 101 So.3d 460, 469, writ denied, 12-2214 (La.4/1/13), 110 So.3d 139; State v. Rogers, 09-13 (La.App. 5 Cir. 6/23/09), 19 So.3d 487, 493, writ denied, 09-1688 (La.4/9/10), 31 So.3d 382.
Here, detectives viewed defendant make a trip to the Walmart, stay fifty minutes, leave without any visible items, and drive home. Upon further investigation, Det. Fahrig saw defendant, on a recording of the Walmart’s security camera system, take items from the Walmart’s shelves, carry those items to areas not viewable to the security cameras, and then return to the cameras’ viewable area without those items. Det. Fahrig learned that the areas of the Walmart not visible to the security cameras were only known to a limited group of individuals, one of whom was defendant’s girlfriend. Detectives also received a report from Ms. Oncale that empty packaging, consistent with the items defendant took off the shelves, was found in the areas where defendant went which were not visible to the store’s security cameras. After defendant’s trip to the Walmart that night, defendant drove home without stopping. Under these circumstances, we cannot say the trial court erred in finding there was probable cause to search defendant’s home for items the detectives suspected defendant stole from the Walmart. Accordingly, defendant’s first assignment of error is without merit.

Assignment Two

In his second assignment of error, defendant argues the trial court erred in denying his motion to suppress evidence because, when the detectives searched his home pursuant to the warrant, the seizure of items within his home disregarded the terms of the search warrant.
117Pefendant raised this exact issue in his second motion to suppress. In support of' his motion, defendant cited United States v. Medlin, 842 F.2d 1194 (10th Cir.1988). The state submitted argument in response, citing State v. Landry, 339 So.2d 8 (La.1976) and State v. Thompson, 448 So.2d 666 (La.1984), reversed on other grounds by, Thompson v. Louisiana, 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984), arguing the trial court should not reconsider the denial of defendant’s motion to suppress.
In Medlin, the Tenth Circuit United States Court of Appeals suppressed all items seized during a search of the defendant’s residence. Id. The court found that while the search warrant executed by the officers was validly issued, the officers exhibited a “flagrant disregard” for the warrant’s particular description of items to be seized. Id. at 1199. The warrant was issued to search the defendant’s home for firearms. Id. at 1195-1196. While the officers seized 130 firearms, they also seized 667 items of property they believed *89 to be stolen. Id. at 1196. The court held that “[w]hen law enforcement officers grossly exceed the scope of a search warrant in seizing property, the particularity requirement is undermined and a valid warrant is transformed into a general warrant thereby requiring suppression of all evidence seized under that warrant.” Id. at 1199.
The state responded to defendant’s second motion to suppress the evidence by arguing that the Louisiana Supreme Court, in Landry, supra, and Thompson, supra, indicated that re-hearings to present new evidence on motions to suppress are generally prohibited. The state pointed to the Supreme Court’s instruction in Thompson that re-hearings on motions to suppress for re-argument “should be sparingly made and limited to instances when the trial judge firmly believes that his prior decision was legally infirm.” Thompson, supra at 669.
118After considering these arguments, but without another hearing or additional evidence, the trial court denied defendant’s second motion to suppress. On review, we recognize that it is well settled that a court of appeal will not reverse a trial court’s decision on a defendant’s motion to reconsider or re-urge his motion to suppress absent an abuse of discretion by the trial court. State v. Lee, 11-398 (La.App. 4 Cir. 1/30/12), 83 So.3d 1191; State v. Robinson, 11-12 (La.App. 5 Cir. 12/29/11), 87 So.3d 881, n. 14.
The transcript from the October 20, 2010 suppression hearing reveals that defendant was well aware of the seizure of the items of his personal property but, despite this knowledge, engaged only in limited questioning on this topic. Furthermore, defendant failed to introduce any evidence that would establish this claim. Defendant did not introduce any evidence showing how many items were seized from his residence when it was searched pursuant to the warrant, nor of the circumstances of that seizure. Defendant’s limited questioning, without additional evidence, was insufficient for defendant to prove his claim that the searching officers illegally exceeded the terms of the warrant.
While the trial court allowed defendant the opportunity to file an additional motion to suppress on the limited grounds of what he would learn upon his review of the video of the Walmart security camera system from December 13, 2009, defendant’s review of that video was not connected to his claim in his second motion to suppress. Therefore, we cannot say that the trial court left the door open for defendant to file his second motion to suppress on this ground. Given his knowledge of this claim, defendant should have presented evidence on this claim at the hearing on his first motion to suppress. When defendant filed his second motion to suppress over a year later, defendant attempted to gain a second bite at the apple.
Lain Landry, supra, the Louisiana Supreme Court stated that the Louisiana Code of Criminal Procedure “contemplates that the pre-trial motion to suppress will be heard expeditiously, with both the prosecution and defense presenting all of their evidence.” Considering this jurisprudence, and defendant’s knowledge of the circumstances constituting this claim, we cannot say the trial court abused its discretion in failing to consider defendant’s second motion to suppress. Accordingly, we find this assignment of error to be without merit.

ERRORS PATENT REVIEW

We have examined this record for errors patent in accordance with La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 *90 (La.App. 5 Cir.1990). We find no errors patent requiring correction.

CONCLUSION

For the foregoing reasons, we find defendant’s assignments of error to be without merit and affirm his convictions and sentences.

AFFIRMED.

. At a June 15, 2011 hearing, the state amended the bill of information filed against defendant. The state changed its eighth count to change the victim's name on that count. The trial court then re-arraigned defendant on count eight, and defendant pled not guilty.

. Captain Rodney Madere, with the St. Charles Parish Sheriff’s Office, testified at the July 7, 2011 hearing that he arranged for defendant to meet his sister, Crystal St. Am-ant. Captain Madere testified that, after this meeting finished, defendant asked to speak with him and then told him that he wanted to cooperate and get a deal. Defendant reportedly told Captain Madere that a person named Joey Austin committed the burglaries and then stored the items at his residence. After hearing Captain Madere's testimony and argument by counsel, the trial court found that Ms. St. Amant was not an agent of the state and that Captain Madere had not interrogated defendant before defendant made his statements to Captain Madere.

. Defendant did not specify which particular motion to suppress denial he wished to appeal.

. It is unclear from Det. Fahrig’s testimony whether she first viewed the security camera recordings of defendant in the Walmart on December 14 or December 16, 2009.

. This search warrant was admitted as State’s Exhibit Two. Additionally, Det. Fahrig testified that she relayed the information she had gathered to Det. Jeremy Pitchford, and that it was Det. Pitchford who actually obtained the search warrant.

. The state offered a receipt it claimed was the one Ms. Oncale created. However, because Ms. Oncale did not authenticate this receipt during her testimony, the trial court did not admit it into the record.

. Ms. Oncale testified that the security camera recordings made at the Walmart are usually deleted ninety days after they are initially recorded.

. Det. Fahrig, in response to a question by the court during the testimony of Ms. Oncale, testified that she was certain that she only received one video from Ms. Oncale during this investigation. Det. Fahrig clarified that she took Ms. Oncale’s statement and viewed the store’s security camera footage in Ms. Oncale's office first, but that she did not receive the burned copy of the store’s video camera footage until a later date, Det. Fahrig testified .that she believed she received the disc containing a copy of the store's security camera footage and the receipt which itemized the value of the things stolen from Ms. Oncale on the same day.

. The warrant specifically allowed the detectives to search defendant’s residence at 399 Marcia Drive, Luling, Louisiana, 70070, all vehicles located on the property, curtilage, and all structures located on the property.