STATE OF LOUISIANA                          NO. 21-K-152

VERSUS                                      FIFTH CIRCUIT

TERRELL MICHAEL WILLIAMS                     COURT OF APPEAL

AND RICO JONES                              STATE OF LOUISIANA

---

May 13, 2021

---

Susan Buchholz
First Deputy Clerk

---

**IN RE** STATE OF LOUISIANA

**APPLYING FOR** SUPERVISORY WRIT FROM THE FORTIETH JUDICIAL DISTRICT COURT, PARISH OF ST, JOHN THE BAPTIST, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE VERCELL FIFFIE, DIVISION "A", NUMBER 19,248

---

Panel composed of Judges Susan M. Chehardy,
Robert A. Chaisson, and Hans J. Liljeberg

## WRIT GRANTED, JUDGMENT REVERSED, MOTIONS TO SUPPRESS DENIED

On September 12, 2019, the St. John the Baptist Parish District Attorney filed a bill of information charging defendant, Terrell Michael Williams, with possession with intent to distribute marijuana under two-and-a-half pounds, in violation of La. R.S. 40:966(A)(1) (count one); "illegal use/possession/control of weapons – crime of violence/CDS", in violation of La. R.S. 14:95(E) (count two); possession with intent to distribute marijuana under two-and-a-half pounds, in violation of La. R.S. 40:966(A)(1) (count three); possession with intent to distribute oxycodone less than twenty-eight grams, in violation of La. R.S. 40:967(A)(1) (count four); and possession with intent to distribute amphetamine less than twenty-eight grams, in violation of La. R.S. 40:967(A)(1) (count five). Counts one and two allegedly occurred on or about May 26, 2019; counts three, four, and five allegedly occurred on or about June 10, 2019.

In the same bill of information, the District Attorney charged defendant, Rico Jermaine Jones, with possession with intent to distribute marijuana under two-and-a-half pounds, in violation of La. R.S. 40:966(A)(1) (count one); "illegal use/possession/control of weapons – crime of violence/CDS," in violation of La. R.S. 14:95(E) (count two); and possession of a firearm by a convicted felon, in violation of La. R.S. 14:95.1 (count six). All counts allegedly occurring on or about May 26, 2019.

21-K-152

Both defendants filed motions to suppress the evidence that the St. John the Baptist Parish Sheriff's Office obtained as a result of a vehicular search conducted on May 26, 2019, pursuant to La. C.Cr.P. art. 703 (A).[1] Defendant Williams argued that the evidence was inadmissible because it was obtained through a search warrant alleging misinformation, and that the seizing officers conducted a search without sufficient legal cause. Defendant Jones argued that the evidence should be suppressed because it was unlawfully and illegally obtained.

St. John the Baptist Parish Sheriff's Office (SJPSO) Deputy Daniel Materne, Lieutenant Jason Raborn, and Deputy Jenny Estreca testified at the March 10, 2021 suppression hearing. Deputy Materne stated that on May 26, 2019, he went to the Daiquiri Shop at 640 West Airline after receiving a report of loitering in the parking lot. Business management asked Deputy Materne and his supervisor, Lieutenant Raborn, to clear the lot, and at approximately 8:45 p.m., they made everybody either go inside the building or go home. Deputy Materne and Lieutenant Raborn then walked back out to the lot.

According to Deputy Materne, as he and Lieutenant Raborn walked around outside, they could smell the odor of fresh marijuana coming from the west side of the business by the dumpster. Lieutenant Raborn looked into the front passenger-side window of a Nissan Altima with his flashlight and observed a clear cellophane baggie containing marijuana by the "gearshifter." Deputy Materne also observed the clear cellophane plastic baggie containing a green vegetable-like substance, which he said was marijuana, when Lieutenant Raborn showed it to him. Deputy Materne recalled that he was approximately two feet away from the marijuana when he saw it and that he had also used his flashlight to look in the vehicle's windows. Deputy Materne then walked around to the driver's side of the vehicle and observed a rifle lying on the floorboard, pointed toward the gas pedal. No one was in the vehicle.

Lieutenant Raborn's testimony corroborated Deputy Materne's testimony. Lieutenant Raborn explained that he used a "high limit flashlight" to see through the tinted windows when he observed the marijuana and that the light "pushed through the dimness of the tint," and he could see the marijuana clearly. He asserted that the marijuana was in plain view in a clear cellophane bag and that it was a little smaller than the shape of an egg. Lieutenant Raborn said that he was two-and-a-half to three feet from the object when he saw it and that there appeared to be green matter inside of the bag. He noted that he was the first officer to see marijuana inside the vehicle. Lieutenant Raborn stated that he walked around to the driver's side and saw the rifle.

Deputy Materne recalled that they "held" the vehicle, had it towed to patrol headquarters, and applied for a search warrant, identified as State's Exhibit 1.[2] Both Deputy Materne and Lieutenant Raborn later helped execute the search warrant on the vehicle. Deputy Materne testified that the following evidence was seized from the vehicle:

---

[1] La. C.Cr.P. art. 703 (A) provides: "A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained."

[2] The affidavit for search warrant and the search warrant itself, State's Exhibit 1, were identified at the hearing and were attached to the State's writ application, but the State did not formally offer it into evidence.

> It was the rifle that was on the floorboard, the marijuana sitting by a Auntie Anne's cup, - - it's a blue cellophane cup by the gearshifter, that weighed approximately 3.4 grams, and also in - - we also located two handguns.
>
> I believe one was in the glove box. And we also located a black backpack that was located in the trunk of the vehicle. And inside the backpack were scales - - digital scales and also approximately a pound of marijuana.

Deputy Materne also identified photographs taken of the vehicle; in one of the photographs, he indicated the marijuana was located next to the gearshift. He stated that the "white substance here" was marijuana and that it weighed 3.4 grams. After looking at the photographs, he stated that it did not appear that the windows were tinted. Deputy Materne could not see the marijuana in the three photographs that defense counsel showed him.[3]

Lieutenant Raborn testified that Deputy Estreca was the first person to enter the vehicle after they obtained the warrant; before anyone else entered the vehicle, she took photographs of it. Lieutenant Raborn believed that it was Deputy Estreca who recovered the marijuana from the center console. Lieutenant Raborn identified the rifle in one photograph and in another photograph, he identified the location of the suspected marijuana, noting that it was placed next to two black iPhones in front of the gearshift.

Lieutenant Raborn explained that the "fuzzy" object in the photograph was the marijuana but that it was clear and not "fuzzy" when he saw it that night. He was "right on the window" when he saw the marijuana. He looked at Defense Exhibit 2, three photographs, and testified that they did not show the baggie that he saw in State's Exhibit 2, but that it did show the location of the baggie, explaining that State's Exhibit 2 may have been a close-up view. Lieutenant Raborn noted that they requested the search warrant based on the marijuana and the rifle, and that it was not illegal to have a rifle in a vehicle by itself. He also noted that he could not see the marijuana from the driver's side, and his face was touching the window when he looked inside.

SJPSO Deputy Estreca testified that she helped execute the search warrant on May 26, 2019. She took photographs of the vehicle before she retrieved the evidence. Deputy Estreca stated that she recovered three weapons, several DNA swabs, a paper cup, some narcotics, and rental paperwork for the vehicle. She also stated that with respect to the narcotics, there was an ashtray and two rolled cigars inside the armrest console between the driver and passenger seats. She noted that there was a small bag of green vegetable material located on the center pocket area in front of the gearshift and underneath the USB plugs for a cellular device. Deputy Estreca acknowledged that she took the photographs in State's Exhibit 2—the "first" photograph was of the rifle, and the "second" photograph showed the center pocket area located in front of the "gearshifter."

Deputy Estreca testified that she personally took the small bag of marijuana located in front of the gearshift out of the vehicle. The officers did not tell her what

---

[3] According to defense counsel, Defense Exhibit 1 *in globo* consisted of three photographs of the outside of the vehicle and the windows on the vehicle, and Defense Exhibit 2 *in globo* was three photographs of the inside of the vehicle from the passenger side.

to photograph; she used her own judgment. She also asserted that the officers told her that they saw marijuana and a rifle inside the vehicle, but they did not tell her where they saw it. Deputy Estreca testified that there were four photographs of the marijuana in the baggie by the "gearshifter" taken from different distances. She explained that the marijuana was directly under the white USB cord but that in the photographs the marijuana appeared "blurry." She stated that it was a "little clear green circular area."

Deputy Estreca testified that she did not know that the photographs she had taken were unclear until she uploaded them into the computer system. There was a screen that "flipped out" on the camera that she could have used while taking the photographs, but she did not use it; she did not have any training to use the camera. She also noted that she did not take any photographs of the marijuana with the door closed, as photographing through a closed window would either create a "flashback" or, if the window was tinted, she would not see inside the vehicle. Deputy Estreca asserted that when she took the photographs in State's Exhibit 2, she was standing outside the passenger door and leaning into the vehicle. She stated that she was not leaning into the vehicle when she took the three photographs in Defense Exhibit 2.

Defendants argued that the officers lacked probable cause to apply for the search warrant—that the officers were lying and that the facts in the search warrant, such as observing the marijuana in plain view, were not true. Defense counsel claimed the officers applied for the search warrant hoping they would find narcotics in the vehicle. Furthermore, the defense argued that the photographs were unclear and did not show that there was marijuana in plain view. The defendants contended that the officers could not have seen the marijuana through tinted windows in the dark.

The State responded that there was no material misrepresentation shown in the affidavit for the search warrant, and it is improbable that the officers would have correctly guessed that marijuana and a rifle were in the vehicle. The fact that the State's photograph of the marijuana was "blurry" did not mean the officers' vision was blurry the night they saw the evidence. The State noted that a clear photograph of the marijuana was not a requirement, and an unclear photo is not grounds for suppression, as the presence of marijuana by the gearshift was corroborated by the three officers who testified at the hearing.

Following arguments of counsel, the trial court granted defendants' motions to suppress evidence, stating in pertinent part:

> … After listening to the facts that represented the testimony and the photos that were presented to me, the Court was not convinced that the contraband was in plain view and that it was easily identified as contraband. In fact, it was said to be white at one point and at another point it was said to be green. It was also indicated that having the Kel-Tec in the car was not illegal.

The Court does not think it meets the qualifications in *Gordon v. California*[4] to be justified as plain view. Additionally, in this instance the plain view doctrine as delineated in *Arizona v. Hicks*[5] was not there. In order for something to be in plain view there has to be prior justification of the intrusion into the protected area, being the car, in the course of which the evidence was inadvertently discovered.

That is an aspect that is no longer required under *Texas v. Brown*[6] because they said it was a little too technical, it was too high of a burden that was set in *Texas v. Brown*. However, it must be immediately apparent without closer inspection that the items or evidence are contraband.

In this case the officer testified that he leaned onto the window to look into the car that he had to use his flashlight to burst through the tint to be able to see into the car. It was also indicated that no one was in the car, meaning that the officers had no reasons to be searching in the car and he did say it was a search, that they were searching in cars, that was the officers['] words. And if you have to use your flashlight and put it to the window and put your face to the glass to burst through the tint is not plain view.

Additionally, from the photos that were placed into the Record you can't see anything in the cupholder. Now, it is understood that a plain view seizure of property does not raise [sic] to an invasion of privacy and is presumptively reasonable, assuming that there is a probable cause to associate the property to criminal activity. The car was in a parking lot at a daiquiri shop that was open so no one was in there.

The officers did not indicate that there were any reasons for them to be looking through windows of cars. So therefore, the Court will grant the Motion to Suppress of all evidence that was obtained in this matter. [Internal footnotes added.]

The State argues that the trial court erred in granting defendants' motions to suppress the evidence on the basis that the marijuana and the rifle were not in plain view. The State argues that the officers could look through the car windows with their faces pressed against the glass because an individual does not have a reasonable expectation of privacy in the areas of his car that are visible to the

---

[4] The trial court may have been referring to *Horton v. California*, 496 U.S. 128, 133, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) ("If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy.").
[5] *See Arizona v. Hicks,* 480 U.S. 321, 327, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) ("However, if police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object, i.e., if the incriminating character of the object is not immediately apparent, the plain view doctrine cannot justify the seizure.")
[6] *See Texas v. Brown*, 460 U.S. 730, 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983).

outside world. It further argues that the nature of the suspected marijuana was immediately apparent without closer inspection. The State notes that courts have found that the use of flashlights to illuminate a darkened area does not constitute a search and thus does not trigger Fourth Amendment protection.

The State also contends that the trial court erred in finding that defendants met their burden of showing an intentional misrepresentation in the affidavit for the search warrant, apparently on the basis that the marijuana was not visible in certain crime scene photographs. According to the State, it strains credulity that two officers lied about seeing marijuana in the center console and then, coincidentally, marijuana was recovered by a third officer in that exact location. The State notes that in the crime scene photographs introduced at the suppression hearing, all three officers pointed out where the marijuana was visible in the center console. The fact that the marijuana was not visible at certain camera angles in the photographs does not mean that the officers lied.

Defendant Williams contends that the State's evidence introduced at the motion for preliminary examination is inconsistent with its evidence offered at the suppression hearing, bringing the veracity of the witnesses' testimony into question. Defendant argues that the affidavit for the search warrant did not mention that the officers used a flashlight when looking into the vehicle's windows, which were tinted, nor that the vehicle was towed before the warrant was obtained. In addition, it is not "immediately apparent" that the fuzzy white spot on one picture was a baggie of marijuana, because the photograph does not show green vegetable matter but instead shows an innocuous object, possibly the reflection of a camera flash. Moreover, no photographs were taken of the vehicle while at its original location in the parking lot; it was seized and towed, likely disturbing the original condition of the items in the car.

DISCUSSION

In a hearing on a motion to suppress, the State shall have the burden of proof in establishing the admissibility of any evidence seized without a warrant. *State v. Favors*, 09-1034 (La. App. 5 Cir. 6/29/10), 43 So.3d 253, 258, *writ denied*, 10-1761 (La. 2/4/11), 57 So.3d 309. When evidence is seized pursuant to a search warrant, the defendant bears the burden of proof at the hearing on his motion to suppress that evidence. La. C.Cr.P. art. 703(D); *State v. Falcon*, 13-849 (La. App. 5 Cir. 3/12/14), 138 So.3d 79, 88, *writ denied*, 14-769 (La. 11/14/14), 152 So.3d 877. The trial court is afforded vast discretion in ruling on a motion to suppress, and its ruling will not be disturbed unless the preponderance of the evidence clearly favors suppression. *State v. Every*, 19-40 (La. App. 5 Cir. 5/23/19), 274 So.3d 770, 777, *writ denied*, 19-1048 (La. 10/1/19), 280 So.3d 159; *see also State v. Long*, 03-2592 (La. 9/9/04), 884 So.2d 1176, 1179, *cert. denied*, 544 U.S. 977, 125 S.Ct. 1860, 161 L.Ed.2d 728 (2005). As a general rule, trial court rulings are reviewed under a deferential standard, but legal findings are subject to a *de novo* standard of review. *State v. Hunt*, 09-1589 (La. 12/1/09), 25 So.3d 746, 751.

Both the Fourth Amendment to the Constitution of the United States and Article I, § 5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures. *State v. Roche*, 05-237 (La. App. 5 Cir. 4/25/06), 928 So.2d 761, 765, *writ denied*, 06-1566 (La. 1/8/07), 948 So.2d 120. Evidence recovered as a result of an unconstitutional search and seizure may not be used in a resulting prosecution against the citizen. *State v. Harris*, 00-1930 (La. App. 5 Cir. 4/11/01),

786 So.2d 798, 801-02. The exclusionary rule bars, as illegal fruit, physical and verbal evidence obtained either during, or as a direct result of, an unlawful invasion. *State v. Hollimon*, 04-1195 (La. App. 5 Cir. 3/29/05), 900 So.2d 999, 1003. But evidence collected pursuant to a valid search warrant is patently not an unlawful invasion and is not considered an illegality or fruit of the poisonous tree. *See State v. Holmes*, 08-719 (La. App. 5 Cir. 3/10/09), 10 So.3d 274, 278, *writ denied*, 09-816 (La. 1/8/10), 24 So.3d 857.

The task for a reviewing court addressing evidence seized pursuant to a search warrant is to ensure that under the totality of the circumstances, the magistrate had a substantial basis for concluding that probable cause existed. *State v. Gaubert*, 14-396 (La. App. 5 Cir. 12/16/14), 167 So.3d 110, 114. If the magistrate finds that the affidavit is sufficiently detailed and reliable to show probable cause, the reviewing court should interpret the affidavit in a realistic and common-sense fashion, being aware that it is normally prepared by non-lawyer police officers in the midst and haste of a criminal investigation. *Id.* Within these guidelines, courts should strive to uphold warrants to encourage their use by police officers. *Id.*

An affidavit supporting a search warrant is presumed to be valid, and the defendant has the burden of proving that the representations made in the affidavit are false. *State v. Shiell*, 16-447 (La. App. 5 Cir. 12/7/16), 204 So.3d 1213, 1217, *writ denied*, 17-41 (La. 9/15/17), 225 So.3d 477; *State v. Dee*, 09-712 (La. App. 5 Cir. 2/23/10), 34 So.3d 892, 899, *writ denied*, 10-705 (La. 10/29/10), 48 So.3d 1097. That burden requires the defendant to prove by a preponderance of the evidence that the affidavit contains intentional misrepresentations. *Shiell, supra.* A material and intentional misrepresentation made in an affidavit presented to a magistrate constitutes a fraud upon the court and will result in the invalidation of the warrant and suppression of the items seized. *Shiell, supra* (citing *State v. Byrd*, 568 So.2d 554, 559 (La. 1990); *State v. Williams*, 448 So.2d 659, 663 (La. 1984)). However, if the misrepresentations or omissions are inadvertent, negligent, or are included without an intent to deceive, the correct procedure is for the warrant to be retested for probable cause after supplying that which was omitted or striking that which was misrepresented. *Id.* (citing *State v. Casey*, 99-23 (La. 1/26/00), 775 So.2d 1022, 1029, *cert. denied*, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000)).

In *State v. Schmidt*, 359 So.2d 133 (La. 1978), the State relied on the plain view and inventory exceptions to the warrant requirement to justify the seizure of the marijuana found after an officer shined his light into the vehicle. The Court held that the officer did not have a legitimate reason to shine his light into the vehicle, noting that the vehicle had been surrounded by police officers, the vehicle's occupants had been removed, and the search was not done to determine if there was a person concealed in the vehicle. The Court concluded that the flashlight check was done as a prelude or as part of an inventory search and held that the seizure of the evidence was unlawful because the search was not a true inventory search. *Id.* at 135-36.

But five years after *Schmidt*, in *Texas v. Brown*, 460 U.S. 730, 739-44, 103 S.Ct. 1535, 1542-44, 75 L.Ed.2d 502 (1983), the United States Supreme Court held that the police lawfully seized evidence in plain view that was discovered when the officer shined his flashlight into the defendant's car after it was stopped at a routine driver's license checkpoint. The Supreme Court recognized that the

plurality opinion in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), provided that the plain view doctrine allowed the warrantless seizure of items when three circumstances were met: First, the "initial intrusion" must be lawful or the officer must otherwise properly be in a position from which he can view a particular area. Second, the officer must discover incriminating evidence "inadvertently." Third, it must be "immediately apparent" to the police that the items they observe may be evidence of a crime, contraband, or otherwise subject to seizure. *Texas v. Brown*, 460 U.S. at 736-37, 103 S.Ct. at 1540-41 (quoting *Coolidge*). Applying those precepts to the facts, the Court in *Brown* found that the officer properly seized the green balloon from the vehicle:

> …[The officer's] action in shining his flashlight to illuminate the interior of [the defendant's] car trenched upon no right secured to the latter by the Fourth Amendment. The Court said in *United States v. Lee*, 274 U.S. 559, 563, 47 S.Ct. 746, 748, 71 L.Ed. 1202 (1927), that "use of a searchlight is comparable to the use of a marine glass or a field glass. It is not prohibited by the Constitution." Numerous other courts have agreed that the use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection.

*Id*., 460 U.S. at 739-40, 103 S.Ct. at 1542.

In *Horton v. California*, 496 U.S. 128, 130, 110 S.Ct. 2301, 2304, 110 L.Ed.2d 112 (1990), the Supreme Court revisited *Coolidge*, holding that the Fourth Amendment does not prohibit the warrantless seizure of evidence of crimes in plain view, even if the discovery was not inadvertent. The Louisiana Supreme Court has implicitly recognized that *Horton* removed the inadvertence requirement. *See State v. Leger*, 05-11 (La. 7/10/06), 936 So.2d 108, 155, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007) (citing *Horton v. California*, 496 U.S. at 136-37, 110 S.Ct. at 2308, "Under the plain view doctrine, if police are lawfully in a position from which they view an object that has an incriminating nature that is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.").

In more recent cases, the Louisiana Supreme Court and this Court have rejected claims that officers looking inside vehicles with flashlights conducted unlawful searches. *See*, *e.g.*, *State v. Hunt*, 09-1589 (La. 12/1/09), 25 So.3d 746, 754 (holding that whatever is discovered by shining a flashlight into a vehicle is considered to be in "plain view," if there is prior justification for the intrusion and it is immediately apparent that the discovery is contraband); *State v. Smith*, 07-815 (La. App. 5 Cir. 3/11/08), 982 So.2d 821, 825-26, *writ denied*, 08-927 (La. 11/14/08), 996 So.2d 1088 (holding that the plain view exception justified the seizure of a plastic baggie containing at least one white rock in a cupholder between the driver and the defendant, even though the officer saw the items with the aid of a flashlight); *State v. Curtis*, 98-1283 (La. App. 5 Cir. 6/1/99), 738 So.2d 657, 659-60, *writs denied*, 99-1950 (La. 12/17/99), 751 So.2d 873 and 99-2679 (La. 3/31/00), 758 So.2d 810) (finding that use of a flashlight to illuminate interior of defendant's vehicle as a safety precaution after a lawful stop, because the passenger did not get out of the car, did not constitute a search within the meaning of the Fourth Amendment, and it was immediately apparent that the items observed

"may be evidence of a crime, contraband, or otherwise subject to seizure."); *State v. Bailey*, 97-493 (La. App. 5 Cir. 11/12/97), 703 So.2d 1325, 1329 (finding that after a valid stop, officer had not conducted an illegal search of the vehicle when shining flashlight on passenger seat where defendant had been sitting; the cocaine was in plain view); *State v. Young*, 13-536 (La. App. 5 Cir. 7/25/13), 2013 WL 10301207 (unpub.), *writ denied,* 13-2057 (La. 11/15/13), 125 So.3d 1111 (finding that "the use of artificial means to illuminate a dark area simply does not constitute a search, and thus triggers no Fourth Amendment protection.").

In *State v. Reyes*, 16-K-95 (La. App. 5 Cir. 3/17/16) (unpub.), the State sought review of the trial court's ruling granting the defendant's motion to suppress evidence. This Court granted the writ application and reversed, citing *Texas v. Brown*, *Horton v. California*, *Hunt*, *Curtis*, and *Bailey*:

> … [T]he officers were conducting proactive patrols due to prior vehicle burglaries in the area. Respondent's vehicle was parked in a public area and the officer had the right to look into the vehicle just as any other member of the public. During that patrol, the officer saw a bag which he thought to contain crack cocaine rocks in plain view in respondent's vehicle. Any passerby could have peered into respondent's vehicle and viewed the bag as the officer did in this case. We do not find the officer's actions, peering inside respondent's vehicle with a flashlight, to be a search within the meaning of the Fourth Amendment. Respondent did not possess a reasonable expectation of privacy under these circumstances.

In the present case, the trial court stated that "if you have to use your flashlight and put it to the window and put your face to the glass to burst through the tint [the evidence] is not plain view." Although trial court rulings ordinarily are reviewed under a deferential standard, legal findings are subject to a *de novo* standard of review. *Hunt*, 25 So.3d at 751. We find the trial court misapplied the law and erred in granting defendants' motions to suppress the evidence seized from the vehicle. Since *Texas v. Brown* and *Horton v. California*, using a flashlight to look into the vehicle's window or putting one's face to the glass does not exceed the bounds of "plain view." *See Hunt*, 25 So.3d at 754. "[I]f a vehicle is parked on a public street, an officer may stand beside it and look into the vehicle as may any member of the public." *Bailey*, 703 So.2d at 1329.

Deputy Materne and Lieutenant Raborn both testified that they used flashlights to look through the passenger-side window and that they observed marijuana in a plastic baggie in front of the "gearshifter" in plain view. Lieutenant Raborn also testified that his face was "right on the window" when he observed it. Deputy Estreca, who was the first person to enter the vehicle during the execution of the search warrant, corroborated this testimony when she stated that she found the marijuana next to the "gearshifter" during the execution of the search warrant, even though the other officers did not tell her where they had seen it.

The trial court also abused its discretion in finding that "the officers did not indicate that there were any reasons for them to be looking through windows of cars." To the contrary, Deputy Materne and Lieutenant Raborn explained that they had been called to clear out the parking lot and when doing so, they smelled

marijuana in the lot near the dumpsters, causing them to investigate further. Likewise, the court's statement—that the photographs admitted into evidence do not explicitly show the marijuana—is explained by Deputy Estreca, who said that she had not received any training for the camera she used but that some of the photos did show the marijuana, and is contradicted by Deputy Materne and Lieutenant Raborn, who testified that they saw the baggie in the center console area in pictures that the State introduced at the hearing. The absence of a clear photograph of the marijuana on the center console does not in and of itself render the officers' testimony invalid.

Based on Deputy Materne's and Lieutenant Raborn's testimony, they were lawfully in a position from which they viewed an object that had an incriminating nature that was immediately apparent. *See Horton v. California*, *supra*; *Leger*, *supra*. The officers immediately recognized the object to be contraband. The plain view exception does not require a police officer to be certain that the object in plain view is contraband; it simply requires that the officer have probable cause to believe the item in question is either evidence and/or contraband. *See Texas v. Brown*, 460 U.S. at 742, 103 S.Ct. at 1543; *Smith*, 982 So.2d at 825.

As in *Reyes*, the vehicle was parked in a public area. The officers could look into the vehicle, as could any other member of the public. Peering inside the vehicle with a flashlight was not a search within the meaning of the Fourth Amendment, and defendants had no reasonable expectation of privacy under these circumstances. "[N]o legitimate expectation of privacy … shield[s] that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." *Texas v. Brown*, 460 U.S. at 740, 103 S.Ct. at 1542.

Lastly, defendant Williams has failed to meet his burden of proving by a preponderance of the evidence that the affidavit for the search warrant contained material misrepresentations. The affidavit indicates that the officers observed the marijuana in plain view on the center console near the "gearshifter." Defendant argues that it omitted the facts that the officers used their flashlights or that the windows were tinted. If misrepresentations or omissions are inadvertent, negligent, or are included without an intent to deceive, the correct procedure is for the warrant to be retested for probable cause after supplying that which was omitted or striking that which was misrepresented. *State v. Williams*, 448 So.2d at 663. Defendant has failed to show that these omissions were intentional; and under *Williams*, including the "omitted" information does not render the warrant invalid or illegally obtained, because use of a flashlight or putting one's face to the window does not remove an otherwise observable object from "plain view."

Once the alleged contraband was identified in plain view, it was appropriate for the officers to seize the vehicle while applying for the search warrant. "No constitutional distinction exists 'between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant.' " *State v. Thompson*, 02-333 (La. 4/9/03), 842 So.2d 330, 337-38 (quoting *State v. Guzman*, 362 So.2d 744, 749 (La. 1978)). Either course is reasonable under the Fourth Amendment. *Thompson*, 842 So.2d at 338; *see also State v. Causey*, 12-1485 (La. 10/26/12), 108 So.3d 1163, 1164 ("Given the totality of circumstances, the officer's observation of the marijuana gleanings on the center console gave him probable cause to conduct a

warrantless search of the vehicle's interior as broad as a magistrate could have authorized.").

For these reasons, we grant the State's writ application and reverse the trial court's judgment. Defendants' motions to suppress evidence are denied.

Gretna, Louisiana, this 13th day of May, 2021.

**SMC**
**RAC**
**HJL**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF DISPOSITION CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE DISPOSITION IN THE FOREGOING MATTER HAS BEEN TRANSMITTED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 4-6** THIS DAY **05/13/2021** TO THE TRIAL JUDGE, THE TRIAL COURT CLERK OF COURT, AND AT LEAST ONE OF THE COUNSEL OF RECORD FOR EACH PARTY, AND TO EACH PARTY NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**21-K-152**

**E-NOTIFIED**

40th District Court (Clerk)
Honorable Vercell Fiffie (DISTRICT JUDGE)
Randy J. Dukes (Respondent)

Honorable Bridget A. Dinvaut (Relator)
Lisa M. Parker (Respondent)
Justin B. LaCour (Relator)

**MAILED**