GUIDRY, Justice.
 
 *
 

 _JjBy bill of information, the defendant, Milton Hunt, is charged with illegal pos
 
 *749
 
 session of a stolen firearm in violation of Louisiana Revised Statute 14:69.1. The defendant entered a plea of not guilty and, subsequently, moved to suppress both the physical evidence and his custodial statement. After conducting a hearing, the trial court granted the motion upon finding the testimony of the only witness, the arresting officer, was not credible. The State of Louisiana (hereafter, the “State”) sought review in the court of appeal, which found no error in the trial court’s ruling. We granted certiorari in this matter to address whether the trial court erred in suppressing the evidence based solely on its credibility determination.
 

 Upon review, the trial court’s credibility determination was not premised on a global rejection of the arresting officer’s testimony. Rather, the court’s credibility assessment was based on factual findings regarding the seizure of the firearm and circumstances surrounding the custodial statement that are not supported by the record. Moreover, the court’s credibility determination is irrelevant insofar as the record and controlling law establish the State sustained its burden of proving sufficient probable cause to support the admissibility of the physical evidence and | gcustodial statement. Therefore, for the reasons that follow, we vacate the district court’s ruling granting the motion to suppress and remand the case to the district court for further proceedings.
 

 FACTS AND PROCEDURAL HISTORY
 

 The instant criminal proceedings stem from a routine traffic stop conducted by Officer Corey Himel of the New Orleans Police Department (hereafter, “NOPD”). Officer Himel, the only witness at the motion to suppress hearing, testified regarding the facts surrounding the traffic stop that ultimately led to the defendant’s arrest and his alleged custodial statement. Specifically, Officer Himel’s testimony revealed that, at approximately 10:00 p.m. on the night of November 12, 2008, he was operating a marked police unit on West End Boulevard when he observed the windows on the vehicle traveling directly in front of him had “very heavy tint.” He described the tint as so dark that a person “couldn’t even see the driver’s silhouette through the window.” Officer Himel decided to execute a traffic stop based on his belief that the tint was in excess of the legal limitations set forth in Louisiana Revised Statute 32:361.1.
 
 [1]
 

 | sAfter signaling for the vehicle to pull over, Officer Himel noticed the defendant,
 
 *750
 
 the driver of the vehicle, make some movements toward the front floorboard. He observed this through the rear window. Officer Himel was questioned by the trial court as to how he could see the defendant’s movement through the allegedly excessive tint. He explained that he stopped the defendant’s vehicle due to an illegal tint on the side windows, not the rear window. He stated he first saw the tint on the side windows when the defendant turned the corner onto a side street. Officer Himel further clarified that he observed the defendant’s suspicious movements through the rear window when he was approximately one to two car lengths away and his headlights shining in the defendant’s car as it pulled over. He elaborated that, while the rear window was tinted, it was not as dark as the side windows.
 

 Officer Himel also testified about the warrantless search subject of the motion to suppress. According to his testimony, upon pulling the defendant’s vehicle over, Officer Himel got out of his patrol car, approached the defendant’s driver’s side, and asked the defendant to roll down his window. When the defendant complied, the officer noticed that he was not wearing a seatbelt. The officer asked the defendant to step out of the vehicle. After the defendant exited his vehicle, Officer Himel shined a flashlight on the floorboard of the driver’s seat to see if the defendant “had thrown something down there.” The light revealed the butt of a 40-caliber semiautomatic handgun sticking out from underneath the driver’s seat. Officer Himel retrieved the weapon and discovered by its insignia that it was an NOPD issued service weapon. He confirmed through radio transmission that the weapon was reported stolen by an NOPD employee. Officer Himel informed the defendant that |4he was under arrest for possession of stolen property and handcuffed him. The defendant was advised of his
 
 Miranda
 
 rights, which the officer attested at the hearing the defendant acknowledged he understood.
 
 [2]
 

 In addition to issuing a traffic ticket for the seatbelt violation, Officer Himel also issued the defendant a citation for the illegal tinting. Officer Himel testified the light transmission device he used on the side windows of the defendant’s vehicle registered the driver’s window with a light transmission of only five-percent, indicating the window was virtually opaque.
 
 See
 
 La. R.S. 32:361.1(C)(1), note 1,
 
 supra.
 

 [3]
 

 Last, Officer Himel testified regarding the circumstances surrounding the defendant’s custodial statement. Within minutes of arriving at the police station for booking and while writing his report, Officer Himel casually asked the defendant where he had acquired the gun. He testified he did not anticipate a response, and was surprised when the defendant replied
 
 *751
 
 that he purchased the gun for $100 from an individual named Tyrone Claiborne and that Claiborne had other weapons available for sale. The officer neither recorded the defendant’s statement, nor obtained the defendant’s signature on a waiver of
 
 Miranda
 
 rights form.
 

 At the close of the hearing, the trial court granted the motion to suppress the physical evidence and the custodial statement based on the absence of probable cause. |fiThe only reasons cited by the court were those taken from her remarks when she openly addressed Officer Himel regarding his testimony:
 

 Officer Himel, I do not find your testimony credible in this hearing. I do not 1-mow how you can see movement in a car with a tint so dark, you could not see the outline of the person in the car. I’m sure you’re a fine officer. But that is my ruling. The fact that you took someone further to a police station and didn’t get them to write a statement down, you didn’t record them, and you didn’t use the documentation, none of this passes the smell test to this Court.
 

 The trial court granted the State time to seek supervisory relief from its ruling, but denied the State’s request for a stay order pending the resolution of its writ application. Subsequently, the court of appeal issued an order denying the State’s writ application and motion to stay the proceedings. This Court granted certiorari to review the correctness of the trial court’s action relative to the motion to suppress, and granted a stay pending further orders.
 
 State v. Hunt,
 
 09-1589 (La.7/14/09), 11 So.3d 501.
 

 LAW AND DISCUSSION
 

 The State urges the trial court erred in suppressing the weapon and the custodial statement based solely on its credibility determination when the record overwhelmingly favors the admission of the evidence. The State argues, irrespective of the trial court’s credibility assessment, Officer Hi-mel’s uncontradicted testimony and the pertinent law indicates his actions relating to the traffic stop, seizure of evidence, and the defendant’s custodial statement were objectively reasonable, citing
 
 State v. Kelley,
 
 05-1905, p. 5 (La.7/10/06), 934 So.2d 51, 54 (“[T]he determinative question in the present case is not whether the police were right or wrong in claiming that they had probable cause ..., but whether their conduct up to that point was objectively reasonable under the Fourth Amendment.”). In contrast, the defense asserts, regardless of the reasonableness of Officer Himel’s actions, it was within the ksound discretion of the trial court to find his testimony not credible based on the internal inconsistencies and inaccuracies.
 

 As a general rule, this Court reviews trial court rulings under a deferential standard with regard to factual and other trial determinations, while legal findings are subject to a
 
 de novo
 
 standard of review.
 
 State v. Hampton,
 
 98-0331, p. 18 (La.4/23/99), 750 So.2d 867, 884. When a trial court makes findings of fact based on the weight of the testimony and the credibility of the witnesses, a reviewing court owes those findings great deference, and may not overturn those findings unless there is no evidence to support those findings.
 
 State v. Bourque,
 
 622 So.2d 198, 222 (La. 1993) (A “trial judge’s ruling [on a fact question], based on conclusions of credibility and weight of the testimony, is entitled to great deference and will not be disturbed on appeal unless there is no evidence to support the ruling.”).
 

 In the motion to suppress which is the subject of these proceedings, the defense contests the constitutionality of the warrantless search, seizure of physical
 
 *752
 
 evidence, and the custodial statement subject of these proceedings. The Constitutions of the United States and Louisiana protect individuals from unreasonable searches and seizures. U.S. Const. Amend. IV; LSA-Const. Art. 1, § 5. The exclusionary rule bars physical and verbal evidence obtained either during or as a direct result of an unlawful search or seizure.
 
 Wong Sun v. United States,
 
 371 U.S. 471, 484, 835 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963). A warrantless search is per se unreasonable unless it falls within certain limited, well-delineated exceptions to the warrant requirement.
 
 Schneckloth v. Bustamante,
 
 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973);
 
 State v. Lee,
 
 05-2098, p. 14 (La.1/16/08), 976 So.2d 109, 122.
 

 The State bears the burden of proving the admissibility of the evidence seized without a warrant when the legality of a search or seizure is placed at issue by a 17motion to suppress evidence. La.Code Crim. Proc. art. 703(D). A trial court’s decision relative to the suppression of evidence is afforded great weight and will not be set aside unless there is an abuse of that discretion.
 
 Lee,
 
 05-2098 at 14, 976 So.2d at 122. We now address separately the trial court’s suppression of the physical evidence and custodial statement.
 

 Suppression of the Physical Evidence
 

 Credibility Determination
 

 As an initial matter, the trial court did not reject the totality of Officer Hi-mel’s testimony relative to the traffic stop, warrantless search of the defendant’s vehicle, and seizure of the firearm. Instead, the court’s remarks at the conclusion of the hearing reflect the court’s concern regarding Officer Himel’s credibility stemmed solely from the discrepancy in his direct examination testimony as to how he could observe furtive movements in the vehicle, but could not see the silhouette of the driver. The trial court simply disregarded Officer Himel’s explanation for the discrepancy and determined his testimony as a whole lacked credibility. However, the trial court’s remarks at the conclusion of the hearing reflect the court’s erroneous assumption that all of the windows in the defendant’s vehicle were tinted similarly and that the tint was so dark as to prevent the arresting officer from seeking into the vehicle. The hearing transcript indicates the officer clarified on cross examination that he made the observation through the rear window of the vehicle, which he characterized as having a lighter tint than the front and side windows.
 
 [4]
 
 This lighter tint, when subjected to the headlights of the officer’s vehicle as it followed behind the defendant, allowed the officer to see the defendant’s vehicle at the time of the stop. In light of the manner in which questions were posed to him during his examination, | sOfficer Himel provided an internally consistent and objectively reasonable accounting of the circumstances regarding the traffic stop. His statements were not challenged by any other testimony or documentary evidence. Therefore, it appears that the trial court’s credibility determination was based on a factual conclusion that is not supported by the record.
 

 Moreover, the trial court’s credibility determination was based on a factual determination that ultimately proves to be irrelevant to the fundamental issue presented in this case: whether the officer lawfully arrested the defendant and lawfully seized the stolen weapon from the vehicle. The trial court rejected as incredible the officer’s testimony that he could observe the
 
 *753
 
 defendant’s movements through the rear window of the car. However, the stop and ensuing arrest were permissible even absent an observation of such allegedly furtive movements.
 

 Traffic Stop and Seizure
 

 It is undisputed than an individual’s constitutional protections from unreasonable searches and seizures are triggered during an investigative traffic stop.
 
 United States v. Sharpe,
 
 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985). The law provides the stopping of a vehicle and its occupants constitute a seizure under the law.
 
 Delaware v. Prouse,
 
 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). In determining the legality of a traffic stop, a reviewing court must decide “whether the officer’s action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.”
 
 Terry v. Ohio,
 
 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968).
 

 For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity occurred or is about to occur, before stopping the vehicle.
 
 United States v. Sokolow,
 
 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989);
 
 State v. Kalie,
 
 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881. When an officer observes what he objectively believes is a traffic offense, the decision to stop the vehicle is reasonable, regardless of the officer’s subjective motivation.
 
 Whren v. United States,
 
 517 U.S. 806, 810, 813, 116 S.Ct. 1769, 1772, 1774, 135 L.Ed.2d 89 (1996);
 
 State v. Waters,
 
 00-0356, p. 4 (La.3/12/01), 780 So.2d 1053, 1056;
 
 State v. Landry,
 
 98-0188, p. 2 (La.01/20/99), 729 So.2d 1019, 1020.
 

 After reviewing the record in its entirety, we conclude Officer Himel did not violate the defendant’s constitutional rights by virtue of the traffic stop. At the inception of the stop, Officer Himel had a reasonable suspicion that the tint on the windows on the defendant’s vehicle was in violation of the statutory limitations set forth in Louisiana Revised Statute 32:361.1(0(1). The officer testified that, while he believed the tint on each "window violated the law, he only measured the light transmission of the front side windows, the darkest windows, and determined they did not comply with the statutory guidelines. His testimony relative to the violation is corroborated by documentary evidence, namely, the traffic citation issued to the defendant for the illegal tint, as well as by the fact that the defendant does not contest the tinting did not comply with the legal limitations.
 

 After validly stopping the defendant’s vehicle, Officer Himel discovered the defendant was not wearing his seat-belt. This violation of Louisiana Revised Statute 32:295.1 is also uncontested by the defendant and substantiated by the issuance of a traffic citation. While the violation was not immediately apparent at the time the defendant’s car was pulled over, the law is clear that a driver’s failure to wear a seatbelt constitutes reasonable cause for an investigatory traffic stop.
 
 Id.
 

 As to the propriety of the search, the defendant’s removal from the vehicle, which ultimately led to the discovery of the weapon, was authorized by virtue of the | mtraffic stop. Both the United States Supreme Court and this Court have recognized that, for the safety of the officer making a traffic stop, the occupants may be ordered out of a vehicle pending completion of the stop.
 
 Maryland v. Wilson,
 
 519 U.S. 408, 415, 117 S.Ct. 882, 886, 137 L.Ed.2d 41 (1997);
 
 State v. Benoit,
 
 01-
 
 *754
 
 2712, p. 6, (La.5/14/02), 817 So.2d 11, 15. The defendant’s exit from his car was further justified given the time of day, coupled with the officer’s lack of a full range of visibility into the vehicle.
 

 Moreover, Officer Himel’s use of a flashlight to conduct the warrantless search, which allowed him to observe the butt of the gun sticking out from underneath the driver’s seat, did not violate the defendant’s protections afforded under the Fourth Amendment.
 
 Texas v. Brown,
 
 460 U.S. 730, 740, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502 (1983) (“[T]he use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection.”). Whatever is discovered by shining a flashlight into a vehicle is considered to be in “plain view,” if there is prior justification for the intrusion and it is immediately apparent that the discovery is contraband.
 
 State v. Edsall,
 
 385 So.2d 207, 210 (La.1980). Officer Himel testified he shined his flashlight toward the floorboard because it was the area the defendant had made the movements which concerned him. However, the illumination would have been proper in the absence of the defendant’s actions by virtue of the validity of the traffic stop and the defendant’s removal from his vehicle.
 

 Therefore, once the defendant’s vehicle was lawfully stopped for the traffic violation and the defendant removed from the vehicle, the weapon was in plain view upon illumination. After the officer observed the NOPD markings on the gun, probable cause existed to arrest the defendant for the possession of the stolen firearm pursuant to Louisiana Revised Statute 14:69.1. Accordingly, Officer Himel’s actions were objectively reasonable under the law.
 
 See Kelley,
 
 05-1905 at 5, 934 So.2d at 54. This finding, coupled with the fact the trial court’s credibility determination has no bearing on the validity of the admissibility of the evidence, we conclude the trial court erred in suppressing the weapon found in the defendant’s vehicle prior to his arrest.
 

 Suppression of the Custodial Statement
 

 It is well-settled the ruling in
 
 Miranda v. Arizona, supra,
 
 “protects an individual’s Fifth Amendment privilege during incommunicado interrogation in a police-controlled atmosphere.”
 
 State v. Leger,
 
 05-0011, p. 13 (La.7/10/06), 936 So.2d 108, 124, citing
 
 State v. Taylor,
 
 01-1638, p. 6 (La.1/14/03), 838 So.2d 729, 739. In
 
 Miranda,
 
 the Supreme Court defined “custodial interrogation” as “questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.”
 
 Id.,
 
 384 U.S. at 444, 86 S.Ct. at 1602. Thus, before a confession or inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his
 
 Miranda
 
 rights, that he voluntarily and intelligently waived those rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement, or promises. La.Code Crim. Proc. art. 703(D); La. R.S. 15:451;
 
 Lee,
 
 05-2098 at 15, 976 So.2d at 122. The admissibility of a confession is a question for the trial court.
 
 Id.
 
 As with the testimony relative to the physical evidence, the trial court’s conclusions on the credibility and weight of the testimony relating to the voluntary nature of the defendant’s confession are accorded great weight and will not be disturbed unless they are not supported by the evidence.
 
 State v. Benoit,
 
 440 So.2d 129, 131 (La.1983). Whether or not a showing of voluntariness has been made is
 
 *755
 
 analyzed on a case-by-case basis with regard to the facts and 112circumstances of each situation.
 
 Id.
 
 We now apply these legal principles to the evidence.
 

 As stated, the State relies exclusively on the hearing testimony of Officer Himel for the admissibility of the defendant’s custodial statement. His testimony alleges he legally arrested the defendant for two traffic violations and for possession of a stolen weapon, and then lawfully obtained the defendant’s custodial statement after he advised the defendant of his
 
 Miranda
 
 rights on the scene. The defense did not present any witness testimony or documentary evidence in contravention of the officer’s statements. Specifically, the defendant does not dispute that he was read his
 
 Miranda
 
 rights and understood them. Nor does he contest that he knowingly and voluntarily waived his right to not speak.
 

 Nonetheless, the trial court dismissed as incredulous Officer Himel’s testimony relative to the incriminating statement. Again, the court did not articulate any specific factual findings connecting its perception of Officer Himel’s lack of credibility to its legal conclusion that the State failed to carry its burden of proving the defendant’s statement was voluntarily and freely given in the absence of any intimidation or inducement. Specifically, the trial court did not reject the totality of the officer’s testimony relative to the custodial statement. Rather, its only reason cited in support of the suppression was the officer’s failure to have the defendant execute a waiver of
 
 Miranda
 
 rights form and/or failure to record the statement. Undeniably, an executed waiver of rights form and a recorded statement would be compelling evidence corroborating the existence of an incriminatory statement. However, as correctly noted by both parties, the execution of a waiver form or failure to record a custodial statement is not a requisite under the law for the admissibility of a confession or incriminating statement.
 
 State v. Navarre,
 
 302 So.2d 273, 275 (La.1974) (“The lack of a signed, written waiver of rights form is not determinative of the issue of the voluntariness of a confession.”).
 

 The testimony of an interviewing police officer alone may be sufficient to prove that inculpatory statement was given freely and voluntarily. La.Code Crim. Proc. art. 703(D); La. R.S. 15:451. Based on our review, Officer Himel’s testimony supports the validity of the arrest and the legality of the custodial statement. There is no evidence to contravene the State’s assertion that the defendant’s custodial statement was a product of his knowing and voluntary waiver of his constitutional rights.
 
 State v. Anderson,
 
 06-2987, p. 24-25 (La.9/9/08) 996 So.2d 993, 995. Again, while we afford deference to the trial court’s determination regarding the general veracity of Officer Himel’s testimony, the court’s articulated basis for rejecting the testimony does not constitute in and of itself a sufficient legal ground to maintain the suppression. The suppression of the incriminating statement is unsupported by the record and controlling law.
 
 See, State v. Green,
 
 94-0887, p. 11 (La.5/22/95), 655 So.2d 272, 281 (“[A]s we have often stated in the past, because the evaluation of witness credibility often plays such a large part in the context of a motion to suppress a confession, reviewing courts should defer to the finding of the trial judge unless his finding is not adequately supported by reliable evidence.”).
 

 Accordingly, we find the trial court erred in granting the defendant’s motion to suppress the custodial statement.
 

 CONCLUSION
 

 This Court is ever mindful of the vast discretion to be afforded to a trial court’s
 
 *756
 
 credibility determination. In the instant matter, the trial court’s credibility determination was not premised on a total rejection of Officer Himel’s testimony. Instead, the court’s credibility assessment in this matter was based on factual findings | ^regarding the seizure of the firearm and circumstances surrounding the custodial statement that are unsupported by the record. Significantly, the court’s credibility determination is also irrelevant to the fundamental issue of the admissibility of the weapon and custodial statement under the facts presented. The evidence establishes that Officer Himel conducted a valid investigatory stop and search of the defendant’s vehicle, and that the seizure of the weapon and ensuing arrest were legal. The record has no indication the circumstances surrounding the defendant’s incriminating statement violated his constitutional rights. Thus, we conclude the trial court erred in granting the defendant’s motion to suppress the physical evidence and custodial statement.
 

 DECREE
 

 For the reasons stated herein, the judgment of the district court granting the defendant’s motion to suppress is vacated and the case is remanded to the district court for further proceedings.
 

 DISTRICT COURT JUDGMENT VACATED; CASE REMANDED TO THE DISTRICT COURT.
 

 JOHNSON, J., dissents.
 

 VICTORY, J., concurs.
 

 *
 

 Judge Benjamin Jones, of the Fourth Judicial District Court, assigned as Justice
 
 Pro Tem-pore,
 
 participating in the decision.
 

 [1]
 

 . Louisiana Revised Statute 32:361.1, entitled "View outward or inward through windshield or windows; obscuring prohibited," provides in pertinent part:
 

 A. As used in this Section and regulations applicable thereto, the following terms shall have the following meanings, unless the context of use clearly indicates otherwise:
 

 (1) "Sun screening device” means a film material or device that is designed to be used in conjunction with motor vehicle safety glazing materials for reducing the effects of the sun.
 

 (2) "Light transmission” means the ratio of the amount of total light to pass through the product or material, including any glazing material, to the amount of total light falling on the product or material and the glazing.
 

 ⅜ *6 ⅜ ⅜ ⅜
 

 C. The provisions of this Section do not apply to any of the following:
 

 (1) A sun screening device when used in conjunction with automotive safety glazing materials on the front side window, with a light transmission of at least forty percent, all tolerances included, side window behind the driver with a light transmission of at least twenty-five percent, all tolerances included, and rearmost windows with a light transmission of at least twelve percent, all tolerances included. All sun screening devices shall not have a luminous reflectance of more than twenty percent.
 

 [2]
 

 . In
 
 Miranda v. Arizona,
 
 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), the United States Supreme Court set forth the doctrine that the prosecution may not use a statement, whether exculpatory or inculpato-ry, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. These safeguards, commonly known as the
 
 “Miranda
 
 warnings," are as follows: Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.
 
 Id.
 

 [3]
 

 . Officer Himel explained that he did not have a light transmission figure for the rear window because the measuring device in his possession required that the sensors be placed on both the interior and exterior sides of the window, limiting its use to windows that could be rolled down.
 

 [4]
 

 . La. R.S. 32:361.1 recognizes different degrees of tint for the front side windows, the side windows behind the driver, and the rear window.