STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 KA 0941

STATE OF LOUISIANA

VERSUS

RAY ALLEN PARKER

JUN 2 7 2024

Judgment Rendered: _____

* * * * *

On Appeal from the
18th Judicial District Court
In and for the Parish of Pointe Coupee
State of Louisiana
Trial Court No. 85103

Honorable J. Kevin Kimball, Judge Presiding

* * * * *

| | |
|---|---|
| Terri R. Lacy | Attorneys for Appellee, |
| Antonio M. "Tony" Clayton | State of Louisiana |
| Brilliant P. Clayton | |
| Kristen Canezaro | |
| New Roads, LA | |
| | |
| Lieu T. Vo Clark | Attorney for Defendant-Appellant, |
| Mandeville, LA | Ray Allen Parker |

* * * * *

BEFORE: McCLENDON, HESTER, AND MILLER, JJ.

**HESTER, J**

The defendant, Ray Allen Parker, was charged by an amended bill of information with the following offenses: possession of a firearm or carrying a concealed weapon by a person convicted of certain felonies (count I), a violation of La. R.S. 14:95.1; illegal carrying of a weapon while in possession of a Schedule I controlled dangerous substance (CDS) (more than 14 grams of marijuana) (count II), a violation of La. R.S. 14:95(E); and possession of two grams or more but less than twenty-eight grams of a Schedule II CDS (methamphetamine) (count III), a violation of La. R.S. 40:967(C)(2)(a); see also La. R.S. 40:964. He pled not guilty and filed a motion to suppress, which the trial court denied. He was tried by a jury and found guilty on each count. The trial court sentenced the defendant as follows: on count I, to twenty years imprisonment[1] without the benefit of probation, parole, or suspension of sentence; on count II, to ten years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence; and on count III, to five years imprisonment at hard labor. The trial court ordered that the sentences be served consecutively.

The defendant now appeals, assigning as error the denial of his motion to suppress and the constitutionality of the sentences. We affirm the convictions, amend and affirm as amended the sentence on count I, and affirm the sentences on count II and count III.

## STATEMENT OF FACTS

On September 15, 2022, Sergeant A. Bentley, a uniform patrol officer of the Pointe Coupee Parish Sheriff's Office ("PCSO"), initiated a traffic stop after

---

[1] The minutes and commitment order indicate that the sentence on count I was imposed at hard labor. However, the sentencing transcript reveals that the trial court gave no indication that the sentence on count I was ordered to be served at hard labor. It is well settled that in the event of a discrepancy between the transcript and the commitment order and/or minutes, the transcript prevails. See **State v. Lynch**, 441 So.2d 732, 734 (La. 1983); see also **State v. Johnson**, 2020-0679 (La. App. 1st Cir. 4/28/21), 2021 WL 1662420, *6 n.4 (unpublished), writ denied, 2021-00802 (La. 10/5/21), 325 So.3d 381.

observing a driver, identified as the defendant, traveling northbound on LA-1 at 94 miles per hour. As Sergeant Bentley pursued the vehicle, the defendant accelerated to approximately 135 miles per hour and passed at least one vehicle in a no-passing zone. After Sergeant Bentley activated his lights and siren, the defendant pulled over to the side of the highway. Sergeant Bentley approached the vehicle with his weapon drawn and commanded the defendant to exit his vehicle. The defendant stepped out and provided his name and date of birth. Sergeant Bentley patted him down, informed him of his **Miranda**[2] rights, and placed him in the back of his police unit. He then re-approached the defendant's vehicle. As Sergeant Bentley opened the front passenger door, he saw a firearm fall out of the vehicle onto the ground. He also observed what he suspected to be marijuana on the passenger seat and narcotics in an opened backpack on the passenger seat. Sergeant Bentley then radioed dispatch for a narcotics agent, secured the scene, and waited until Sergeant Scott Grezaffi of the PCSO Narcotics Division arrived at the scene and collected the evidence.

## ASSIGNMENT OF ERROR NUMBER ONE

In assignment of error number one, the defendant argues that the warrantless search of his vehicle was unconstitutional. Thus, he contends the trial court erred in denying his motion to suppress the evidence.

The Fourth Amendment to the United States Constitution and Article I, Section 5, of the Louisiana Constitution protects people against unreasonable searches and seizures. It is well-settled that a search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the State can affirmatively show that the warrantless search and seizure was justified by one of the narrowly drawn exceptions to the warrant requirement. See La. Code Crim. P.

_____

[2] **Miranda v. Arizona**, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

art. 703(D); **State v. Thompson**, 2002-0333 (La. 4/9/03), 842 So.2d 330, 335. Any evidence recovered as a result of an unconstitutional search or seizure is inadmissible. **State v. Hamilton**, 2009-2205 (La. 5/11/10), 36 So.3d 209, 212. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained. La. Code Crim. P. art. 703(A).

When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress, the State bears the burden of proving the admissibility of any evidence seized without a warrant. See La. Code Crim. P. art. 703(D). Thus, once a defendant makes an initial showing that a warrantless search or seizure occurred, the burden of proof shifts to the State to prove the admissibility of any evidence seized without a warrant. See La. Code Crim. P. art. 703(D).

The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is, however, recognized by both federal and state jurisprudence. **State v. Bell**, 2014-1046 (La. App. 1st Cir. 1/15/15), 169 So.3d 417, 421. The standard for evaluating a challenge to a routine warrantless stop for violating traffic laws is the two-step formulation articulated in **Terry v. Ohio**, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The court must determine "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." See **State v. Hunt**, 2009-1589 (La. 12/1/09), 25 So.3d 746, 753; **Terry**, 392 U.S. at 20, 88 S.Ct. at 1879.

For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred or is about to occur, before stopping the vehicle. See **Hunt**, 25 So.3d at 753; **State v. Lee**, 2018-0541 (La. App. 1st Cir. 11/6/18), 2018 WL 5832212, *2 (unpublished). Reasonable suspicion for an investigatory stop is

4

something less than probable cause and must be determined under the specific facts of each case by whether the officer had sufficient knowledge of particular facts and circumstances to justify the infringement on the individual's right to be free from governmental interference. **Thompson**, 842 So.2d at 335. Generally, when an officer observes what he objectively believes is a traffic offense, the decision to stop the vehicle is reasonable. See **Whren v. U.S.**, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). Furthermore, "even relatively minor traffic violations provide an objective basis for lawfully detaining [a] vehicle and its occupants." **State v. Waters**, 2000-00356, (La. 3/12/01), 780 So.2d 1053, 1056. Here, the traffic violation was based on the defendant's actions of speeding in excess of 100 miles per hour.

Once a vehicle is lawfully stopped, an officer may order the driver, as well as the passengers, out of a vehicle pending completion of the stop. **Maryland v. Wilson**, 519 U.S. 408, 414-15, 117 S.Ct. 882, 886, 137 L.Ed.2d 41 (1997); **State v. Cure**, 2011-2238 (La. 7/2/12), 93 So.3d 1268, 1270 (*per curiam*), cert. denied, 568 U.S. 988, 133 S.Ct. 549, 184 L.Ed.2d 357 (2012); see also **Pennsylvania v. Mimms**, 434 U.S. 106, 110-11, 98 S.Ct. 330, 333, 54 L.Ed.2d 331 (1977) (*per curiam*); **State v. Matthews**, 2015-1281 (La. App. 1st Cir. 2/26/16), 191 So.3d 1080, 1084 ("While ordering passengers out of cars may be a slight inconvenience, it is not a serious intrusion upon privacy interests."). Pursuant to La. Code Crim. P. art. 215.1(D), during the detention of an alleged violator of any provision of the motor vehicle laws of this State, an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity. Louisiana Code of Criminal Procedure article 213(A)(1) allows an officer to arrest a person without a warrant when that person has committed a traffic

5

violation in his presence. **State v. Perique**, 2018-981 (La. 6/28/18), 248 So. 3d 317, 318 (per curiam).

However, Article 215.1(D) does not preclude a police officer, who may lack reasonable suspicion of other criminal activity, from engaging a motorist in conversation while investigating a routine traffic violation. The officer may also compel or instruct the motorist to comply with the administrative or other legal requirements of Title 32 or Title 47 of the Louisiana Revised Statutes. Therefore, an officer is allowed to conduct a routine driver's license and vehicle registration check and may engage in conversation with the driver and any passenger while doing so. See **State v. Lopez**, 2000-0562 (La. 10/30/00), 772 So.2d 90, 92-93 (*per curiam*); **State v. Barnes**, 2012-0615 (La. App. 1st Cir. 11/2/12), 2012 WL 5387692, *4 (unpublished), writ denied, 2013-0634 (La. 8/30/13), 120 So.3d 264. Furthermore, courts have upheld cases similar to the instant case in which an officer, after removing the occupant(s) from the vehicle, discovered evidence upon opening a car door and/or peering into the vehicle. **Cure**, 93 So.3d at 1271; **State v. Arnold**, 2011-0626 (La. 4/27/11), 60 So.3d 599, 600 (*per curiam*); **Matthews**, 191 So.3d at 1084-85; **State v. Lockett**, 2012-1561 (La. App. 4th Cir. 7/24/13), 120 So.3d 886, 895, writ denied, 2013-2038 (La. 11/22/13), 126 So.3d 484.

When determining whether an investigatory stop was justified by reasonable suspicion, a reviewing court must consider the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer. **State v. Huntley**, 97-0965 (La. 3/13/98), 708 So.2d 1048, 1049 (*per curiam*). On appellate review, a trial court's ruling on a motion to suppress the evidence is entitled to great weight because the trial court had the opportunity to observe the witnesses and weigh the credibility of their testimony. **State v. Jarrell**, 2007-1720 (La. App. 1st Cir. 9/12/08), 994 So.2d 620, 625. When a trial court denies a motion to suppress, we do not review the record *de novo*. Because the evaluation of witness credibility often

plays such a large part in the context of a motion to suppress a confession, reviewing courts should defer to the finding of the trial judge unless his finding is not adequately supported by reliable evidence. See **State v. Green**, 94-0887 (La. 5/22/95), 655 So. 2d 272, 281; see also **State v. Tucker**, 2013-1631 (La. 9/1/15), 181 So. 3d 590, 610. However, a trial court's legal findings are subject to a *de novo* standard of review. See **Hunt**, 25 So.3d at 751. In determining whether the ruling on a motion to suppress was correct, we are not limited to the evidence adduced at the hearing on the motion. We may consider all pertinent evidence given at the trial of the case. **State v. Chopin**, 372 So.2d 1222, 1223, n.2 (La. 1979); **Bell**, 169 So.3d at 421.

While not directly contested by the defendant on appeal, we note that Sergeant Bentley had probable cause to stop the defendant. At the hearing on the motion to suppress and again at trial, Sergeant Bentley testified that the defendant was operating his vehicle at a high rate of speed, obtained by radar, of 94 miles per hour in a 35 miles per hour, no passing zone. The defendant then accelerated to well over 100 miles per hour as he was being pursued by Sergeant Bentley. Sergeant Bentley testified that it took him approximately four miles to catch up to the defendant's vehicle on La. 1, and that during those four miles, he observed the defendant's vehicle pass two cars in a 35 mile per hour no-passing zone continuing North on La. 1. Sergeant Bentley radared defendant's vehicle at 135 miles per hour. He then initiated his lights and siren in an attempt to pull the vehicle over.

Based on the defendant's speeding and passing one or more cars in a no-passing zone, Sergeant Bentley had probable cause to believe one or more traffic violations had occurred. See La. R.S. 32:61(A); La. R.S. 32:74(B); La. R.S. 14:99(A). Thus, Sergeant Bentley had an objectively reasonable basis to stop the

vehicle and detain the defendant.[3] See La. Code Crim. P. art. 213(A)(1); La. Code Crim. P. art. 215.1(A); see also **State v. Kalie**, 96-2650 (La. 9/19/97), 699 So.2d 879, 881 (*per curiam*); **State v. Williams**, 2009-0074 (La. App. 1st Cir. 6/12/09), 2009 WL 1655545, *2 (unpublished).

Sergeant Bentley testified that the stop took place at night time, at approximately 10:00 p.m., that it was dark outside, and that the defendant's windows were dark-tinted. He further testified[4] that after he detained the defendant and placed him in the back of his unit, he walked back to the defendant's vehicle and opened the car doors only to secure the vehicle by making "sure there was no other parties in it." He specifically stated that he wanted to make sure no one was on the floorboard, noting that he once conducted a vehicle stop during which he did not initially see an individual who was curled up on a vehicle floorboard, until he opened the car door. The trial court ultimately found Sergeant Bentley's testimony credible. On appeal, the defendant now argues that the trial court erred in concluding that opening the doors of the vehicle in this case did not constitute an unconstitutional search. Thus, as discussed below, the pivotal inquiry in this case is whether Sergeant Bentley had a prior justification for opening the doors and looking inside the vehicle.

Under the "plain view" doctrine, if police are lawfully in a position from which they view an object that has an incriminating nature that is immediately apparent, and if the officers have a lawful right of access to the object, they may

---

[3] We note that there was some indication that, although requested, the defendant may not have provided his driver's license at the time of the stop. Specifically, Sergeant Bentley testified that the defendant provided his name and date of birth when asked for his driver's license and vehicle registration, but Sergeant Bentley did not recall the defendant providing his actual license or registration or indicating where or if same was located.

[4] We note that Sergeant Bentley's testimony was at one point unclear as to whether he saw the evidence when he first approached the defendant's vehicle to order him to exit it, or upon returning to the vehicle, after detaining the defendant. However, he subsequently clarified that the evidence was discovered after the defendant had been detained and placed in the back of the unit, when he opened the car door to check for additional passengers. Sergeant Bentley first opened the rear passenger door and then opened the front passenger door, at which point the firearm fell out, and he saw the believed narcotics on the side and top of the seat.

seize it without a warrant. **Horton v. California**, 496 U.S. 128, 136-37, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990); **State v. Leger**, 2005-0011 (La. 7/10/06), 936 So.2d 108, 155, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007). A seizure is reasonable under the plain view doctrine if the officer has probable cause to believe the item seized was associated with criminal activity. **Barnes**, 2012 WL 5387692 at *6. Accordingly, two requirements must be met before evidence seized from a vehicle without a warrant is admissible under the plain view doctrine: (1) there must be prior justification for the police intrusion into the vehicle, and (2) it must be immediately apparent to the officer without close inspection that the object consists of contraband. See **Arnold**, 60 So.3d at 600.

In **Matthews**, a sheriff's deputy investigated a store clerk's report of a female and male customer attempting to purchase prepaid gift cards with numerous credit cards that were declined. Upon seeing the SUV that matched the store clerk's description, the deputy parked behind the SUV, and after observing the defendant placing several bags of merchandise in the SUV, called out to the defendant. As the defendant avoided eye contact, which raised the deputy's suspicions, the deputy advised him of his **Miranda** rights, conducted a pat-down search, and felt a large bulge in the defendant's pocket. Upon the deputy's request, the defendant removed the items bulging in his pocket, which consisted of fifteen credit cards and three prepaid gift cards. After a backup officer arrived, the deputy approached the SUV, which had tinted windows, and knocked on the front passenger door. After receiving no response, he opened the door, detected the odor of marijuana, and observed in plain view a bag of marijuana next to three pills wrapped in cellophane in the center console. No one was inside the SUV, and the female was apprehended when she exited the store. **Matthews**, 191 So.3d at 1082-83.

On appeal, in arguing that the trial court erred in denying a motion to suppress filed in that case, the defendant therein maintained that the deputy should have

looked through the front windshield to locate the female suspect. Under the circumstances of that case, this court found that the deputy acted in an appropriate and reasonable manner, noting that the deputy was justified in opening the door and leaning into the car to see if the female suspect was in the backseat, and that the deputy had the right to locate the female suspect to ensure his safety. **Matthews**, 191 So.3d at 1084-85.

In **Cure**, undercover detectives approached a parked vehicle after observing the two male occupants exhibit behavior consistent with drug use. They ordered the driver to exit the vehicle, and ordered both occupants to put their hands up. As one of the detectives opened the driver's door, he observed that the driver had on his lap a notebook with tan powder scattered on top. The other detective simultaneously approached the passenger side and observed that although the passenger, the defendant in that case, had his hands up on the dashboard, his right hand was clenched. The detective ordered the defendant to open his hand, and as the defendant complied, he placed two clear plastic bags containing tan powder on the dashboard. After both men were arrested, the detectives found additional evidence of heroin usage in the vehicle. The trial court denied a motion to suppress filed by the defendant, finding the officers acted appropriately. **Cure**, 93 So.3d at 1269-70.

However, on appeal, the Fourth Circuit reversed the trial court's ruling, finding that although there was reasonable suspicion to initiate the stop, the detectives did not have the right to open the vehicle's door (deeming that doing so constituted an illegal search of the vehicle) or to order the defendant to open his hand. **State v. Cure**, 2011-0109 (La. App. 4th Cir. 10/5/11), 84 So.3d 592, 597, rev'd, 93 So.3d 1268. Reversing the appellate court's decision, the Louisiana Supreme Court found the detectives had the authority to order both the driver and the passenger to step out of the car, even assuming they lacked any particularized

10

and articulable basis for believing the occupants posed a risk to their safety. The court further reasoned,

> Given [the detective's] lawful authority to order the occupants out of the car, we fail to see how her act in opening the door of the Camry, thereby asserting unquestioned command of the situation, even marginally increased the degree of intrusiveness on the privacy interests of the driver occasioned by the officer's direct order to exit the vehicle. [The detective] did not attempt to enter the vehicle physically, and one way or the other, the door would open, thereby exposing the interior of the vehicle. . .

**Cure**, 93 So.3d at 1271.

In **Arnold**, after the defendant was arrested for a traffic violation, an officer entered the defendant's vehicle for the purpose of securing it by rolling up the windows and turning off the engine. While performing this "caretaking" function, the officer observed, in plain view, an unzipped backpack behind the passenger seat containing three plastic bags of marijuana. The Louisiana Supreme Court found that the plain view exception to the warrant requirement applied in that case, concluding that the stated purpose for entering the vehicle provided justification for the police intrusion, and that it was immediately apparent to the officer without close inspection that the backpack contained contraband. **Arnold**, 60 So.3d at 600.

Similarly, herein, we find that Sergeant Bentley's course of action was reasonable and permissible. As previously stated, Sergeant Bentley's decision to stop the defendant's vehicle was justified, after observing the defendant commit traffic violations. As the stop was lawful, Sergeant Bentley could also lawfully order any passengers to exit the vehicle. Thus, Sergeant Bentley properly returned to the vehicle and opened the doors to look for any passengers for the officer's safety and to secure the vehicle if needed. See **Cure**, 93 So.3d at 1270; **Matthews**, 191 So.3d at 1084. At the point of opening the doors, Sergeant Bentley was lawfully in a position from which he viewed evidence with an incriminating nature that was

11

immediately apparent.[5] Based on the totality of the circumstances, we find the "plain view" exception to the warrant requirement applies in this case and, thus, the seizure of the firearm and drugs was permissible. See **Arnold**, 60 So.3d at 600. Accordingly, the trial court did not abuse its discretion in denying the defendant's motion to suppress.[6] Assignment of error number one lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In assignment of error number two, the defendant argues that there is no justification for imposition of maximum consecutive sentences in this case. Thus, he argues the imposed sentences are constitutionally excessive.

At the outset, we note that the defendant failed to file a motion to reconsider sentence or object to the sentences. Louisiana Code of Criminal Procedure article 881.1(A)(1) requires a defendant or the State to make or file a motion to reconsider sentence within thirty days of sentencing unless the trial court sets a longer period of time at the time of sentencing. The failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider may be based, including a claim of excessiveness, shall preclude the State or the defendant from raising an objection to the sentence or from urging any ground not raised in a motion on appeal or review. La. Code Crim. P. art. 881.1(E). As the defendant failed to make or file a motion to reconsider sentence, assignment of error number

---

[5] The defendant does not contest that the incriminating nature of the evidence, which included a handgun, suspected marijuana in a clear plastic baggie, multicolored, suspected MDMA pills, and a brownish substance believed to be heroin, was immediately apparent. In an abundance of caution, we note that we find it was reasonable for Sergeant Bentley to believe that the handgun and observed drugs was contraband. See **Barnes**, 2012 WL 5387692 at *6-7 (the officer, after removing the defendant from the vehicle, observed a gun "sticking just down by the seat" and a clear plastic bag of cocaine on the ground near the passenger side of the vehicle); see also **State v. Sanchez**, 617 So.2d 948, 950 (La. App. 4th Cir. 1993) (where, under the "plain view" doctrine, the police officer was justified in retrieving a firearm from under the seat of the vehicle at least for purposes of investigating the firearm to see if it was legal).

[6] We note that the trial court, as also argued by the State on appeal, in part considered that the evidence would have been discovered during an inventory search of the vehicle. Because we have already found that the firearm and narcotics were legally seized, any discussion of whether the contraband would have been found pursuant to a valid inventory search is pretermitted. See **Barnes**, 2012 WL 5387692, *7.

12

two is not reviewable. **State v. Laue**, 2020-0225 (La. App. 1st Cir. 12/30/20), 326 So.3d 267, 282, writ denied, 2021-01329 (La. 11/17/21), 327 So.3d 993, cert. denied, ___ U.S. ___, 142 S.Ct. 2659, 212 L.Ed.2d 612.

## PATENT ERROR REVIEW

On appeal, this court routinely reviews the record for error patent. Pursuant to La. Code Crim. P. art. 920(2), in conducting a patent error review, this court shall consider "[a]n error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." We note the following as to the sentence imposed on count I. Pursuant to La. R.S. 14:95.1(B), the defendant was subject to imprisonment at hard labor for not less than five nor more than twenty years without the benefit of probation, parole, or suspension of sentence and a fine of not less than one thousand dollars nor more than five thousand dollars. As previously noted, the sentence on count I, possession of a firearm or carrying a concealed weapon by a person convicted of certain felonies, was not imposed at hard labor. Further, the trial court did not impose a fine on count I. Thus, the sentence imposed on count I is illegally lenient.

Inasmuch as an illegal sentence is an error discoverable by a mere inspection of the proceedings without inspection of the evidence, La. Code Crim. P. art. 920(2) authorizes consideration of such an error on appeal. Moreover, La. Code Crim. P. art. 882(A) authorizes the appellate court to correct an illegal sentence on review. Since a sentence at hard labor was the only sentence that could be imposed, we find that correction of this aspect of the defendant's illegally lenient sentence does not involve the exercise of sentencing discretion and, as such, this court has the authority to simply amend the sentence. See **State v. Corbitt**, 2004-2663 (La. App. 1st Cir. 6/10/05), 917 So.2d 29, 33, writ denied, 2005-1656 (La. 2/3/06), 922 So.2d 1174. Accordingly, we hereby correct the sentence on count I by providing that it be served at hard labor. **State v. Jefferson**, 2018-0037 (La. App. 1st Cir. 6/1/18), 2018 WL

13

2454474, *4 (unpublished). However, we decline to remand for the imposition of the mandatory fine.[7] See **State v. Price**, 2005-2514 (La. App. 1st Cir. 12/28/06), 952 So.2d 112, 124-125 (en banc), writ denied, 2007-0130 (La. 2/22/08), 976 So.2d 1277.

Finally, the minutes and the transcript indicate that after the trial court imposed the sentences herein, it advised the defendant that he had "two years to apply for post conviction relief." However, a defendant generally has two years "after the judgment of conviction and sentence has become final" to seek post-conviction relief. La. Code Crim. P. art. 930.8(A). Thus, the trial court failed to properly advise the defendant of the prescriptive period for seeking post-conviction relief. Nonetheless, the trial court's failure to properly advise the defendant has no bearing on the sentence and is not grounds to reverse the sentence or remand for resentencing. **State v. LeBoeuf**, 2006-0153 (La. App. 1st Cir. 9/15/06), 943 So.2d 1134, 1142-43, writ denied, 2006-2621 (La. 8/15/07), 961 So.2d 1158. Accordingly, this error is not reversible. Out of an abundance of caution and in the interest of judicial economy, we note for the record and advise the defendant that La. Code Crim. P. art. 930.8 generally provides that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of La. Code Crim. P. arts. 914 or 922. **LeBoeuf**, 943 So.2d at 1143.

For the above reasons, we correct the sentence on count I to provide that it be served at hard labor, and affirm the sentence on count I as amended.

**CONVICTIONS AFFIRMED; SENTENCE ON COUNT I AMENDED, AND AS AMENDED, AFFIRMED; SENTENCES ON COUNT II AND COUNT III AFFIRMED.**

---

[7] We note that the lack of a fine is not inherently prejudicial to the defendant and neither the State nor the defendant raised this issue on appeal.

14