Judgment rendered December 17, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,675-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

JAMES D. YOUNG                              Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 391,313

Honorable Michael A. Pitman, Judge

* * * * *

LOUISIANA APPEALS & WRIT                    Counsel for Appellant
SERVICE
By: Remy Voisin Starns
    Michael Mitchell
    Annette Fuller Roach

JAMES E. STEWART, SR.                       Counsel for Appellee
District Attorney

SAMUEL S. CRICHTON
HILARY HILEMAN
BRIANA SPIVEY
Assistant District Attorneys

* * * * *

Before HUNTER, MARCOTTE, and ELLENDER, JJ.

**MARCOTTE, J.**

This criminal appeal arises from the First Judicial District Court, Parish of Caddo, the Honorable Michael A. Pitman presiding. Defendant, James D. Young, was convicted of aggravated flight from an officer, in violation of La. R.S. 14:108.1(C). He was sentenced to five years at hard labor. He now appeals, arguing that the evidence at trial was insufficient to convict him. For the following reasons, we affirm defendant's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

On November 10, 2022, Mr. Young was charged by bill of information with aggravated flight from an officer on September 13, 2022, in violation of La. R.S. 14:108.1(C). He pled not guilty. A jury was empaneled and a trial was held on January 23, 2024, at which the following evidence was adduced.

On September 13, 2023, Shreveport Police Department ("SPD") Sergeant Robert Brice ("Sgt. Brice"), was patrolling around the Peach Street area of Shreveport in a marked SPD vehicle. Sgt. Brice testified that he saw a male drive past him in the opposite direction, sitting low in his vehicle; he was unable to tell whether the driver was wearing a seatbelt. Sgt. Brice said that as he began turning his vehicle around, he observed Mr. Young's vehicle turn right onto David Raines Road from Peach Street without using a turn signal. Sgt. Brice testified that he then activated his lights and siren which in turn activated his dash cam recorder. The dash cam recording was introduced into evidence and published to the jury.

Sgt. Brice stated that he pursued the vehicle, trying to get close enough so the driver could hear the siren and see the lights. Mr. Young

refused to stop his vehicle. He said the vehicle traveled several streets, making several turns during his attempts to get it to stop. Sgt. Brice testified that during the pursuit he reached a speed of 70 miles per hour, and the vehicle pulled away from him, traveled in the opposite lane of travel, and failed to stop at a stop sign before running off the road and crashing into someone's yard.

Sgt. Brice said that when the car came to a stop in someone's yard, a person in the passenger's seat jumped out and ran off with a backpack. He stated that another person exited the driver's side of the vehicle and headed in a different direction. Sgt. Brice testified that he saw the driver exit the car and that other officers apprehended him. He identified that person as Mr. Young, whom he identified in the courtroom.

On cross-examination, when asked what prompted him to turn around to follow the vehicle, Sgt. Brice stated that the driver was sitting low and he could not tell if he had his seat belt on. He acknowledged the possible seatbelt violation was not in his report because it was not the reason he stopped the vehicle. Sgt. Brice testified that the speed limits on the roads they traveled in the pursuit varied from 35 to 25. He said that that he could not say the speed of the vehicle he pursued but noted he traveled up to 73 miles per hour during the pursuit.

Sgt. Brice acknowledged that during the pursuit he traveled in excess of the speed limit and without using a turn signal, but he believed it was safe for him to do so because he had an "audible signal letting everybody know that I am police."

Sgt. Brice testified that he pulled up as the occupants of the vehicle were beginning to exit, and as they exited, his attention remained with the

vehicle, because he did not know who else might be in the vehicle or whether they were armed. Sgt. Brice acknowledged that he did not see Mr. Young's face; instead, he saw Mr. Young's head when he exited the vehicle.

Detective Daniel Robalo ("Det. Robalo"), an SPD violent crimes detective in a "gang and gun unit," testified that he was in the area when Sgt. Brice radioed for help, so he and other officers close by responded to the scene. Det. Robalo was in the backseat, on the driver's side. He testified that he saw a vehicle heading in their direction jump a curb and a person flee from the vehicle on foot. The vehicle was to his left and he saw a person exit the driver's seat and run in the direction where he was trying to cut him off. As the driver ran, he tripped and fell. Det. Robalo testified that he lunged to the ground to get on top of him and hold him down. He and other officers took the driver into custody.

Det. Robalo identified James Young in the courtroom as the person he saw exit from the driver's door and also as the person who was apprehended. The vehicle was registered to Mr. Young.

Although Det. Robalo testified he was able to see Mr. Young exit the vehicle, he did not see him drive it. He also acknowledged that he was unable to see Mr. Young's face once he sprinted from the vehicle. Det. Robalo identified a recording from his body cam, which was admitted into evidence.

The jury unanimously found Mr. Young guilty as charged. He filed a motion for a new trial and a motion for a post-verdict judgment of acquittal, both of which were eventually denied in open court on January 6, 2025.

On February 20, 2024, the state filed a habitual offender bill of information, alleging that Mr. Young was a second felony habitual offender.

3

Mr. Young was previously convicted of possession of a Schedule II controlled dangerous substance, for which he was sentenced to five years at hard labor, suspended, and was placed on two years' supervised probation. While the habitual offender proceedings were still pending,[1] Mr. Young was sentenced on February 18, 2025, to five years at hard labor with credit for time served for his conviction on the instant aggravated flight charge. The trial court informed Mr. Young of his appellate and post-conviction relief time constraints. He filed a motion to reconsider the sentence, which was denied on April 16, 2025.

Mr. Young now appeals his conviction.

## DISCUSSION

*Sufficiency of the evidence*

Mr. Young's sole assignment of error is that the evidence was insufficient to convict him. He asserts that the state fell short of its burden in proving that it had probable cause to stop his vehicle and that he was the driver of the vehicle.

Mr. Young notes that the Louisiana Supreme Court has indicated that there must be objective probable cause of a traffic violation to justify a traffic stop, and the officer's conclusory statement that he was sitting low in his seat and may not have had a seatbelt on was a subjective belief of the officer. Mr. Young further notes that these supposed offenses were Sgt. Brice's sole stated basis for turning around and pursuing the vehicle, yet he admitted that he ticketed Mr. Young for neither infraction.

---

[1] The record lodged with this court does not contain the habitual offender proceedings, and they are not a part of this appeal. This court denied Mr. Young's motion to supplement the record with transcripts from the habitual offender proceedings because no appeal had been taken regarding them.

4

Regarding Sgt. Brice's claim that he failed to use a turn signal, Mr. Young argues that Sgt. Brice could not have seen whether a turn signal was used or not because he was in the process of turning his vehicle around when the turn was made. Mr. Young notes that the dash camera footage from Sgt. Brice's unit does not begin until after the turn was made, so the only evidence of the traffic violation is Sgt. Brice's testimony. Mr. Young asserts that any actions that flowed from the pursuit could not retroactively provide probable cause for the stop.

Mr. Young also argues that the state failed to prove beyond a reasonable doubt that he was the driver of the vehicle. He notes that neither Sgt. Brice nor Det. Robalo was able to positively identify him as the person behind the wheel at any point in the chase. He points out that both officers saw a person exit through the driver's door and run, but neither of them was able to see that person's face. He asserts that there is no direct evidence that he was driving the car involved in the chase. Mr. Young requests that this court set aside his conviction and order an acquittal.

The state argues that the evidence at trial was more than sufficient to convict Mr. Young of aggravated flight from an officer. The state contends that it proved beyond a reasonable doubt that the officer had reasonable grounds to believe that the driver of the vehicle had committed an offense. The state points to Sgt. Brice's testimony that he observed Mr. Young's vehicle turning from Peach Street onto David Raines Road without using a turn signal. Although Sgt. Brice had begun turning his police cruiser around because he was unsure if Mr. Young was wearing a seatbelt, the state notes that Sgt. Brice also testified that he initiated the stop solely based upon Mr. Young's failure to use a turn signal.

The state also claims that Sgt. Brice gave a perfectly reasonable explanation for why the traffic offense had not been recorded on his vehicle's dashboard camera. Sgt. Brice testified that he only activated his lights and siren, which in turn activated the dash cam, after he observed the traffic offense, and because his police vehicle was not facing Mr. Young's vehicle at the time he activated his lights and siren, the traffic violation was not caught by the vehicle's camera system.

The state also argues that it proved beyond a reasonable doubt that Mr. Young was the driver of the vehicle. The state points to Det. Robalo's testimony that he saw the person who exited the driver's side of the vehicle and that he chased, apprehended, and held down that person until he was later identified via records as Mr. Young. The state requests that this court affirm Mr. Young's conviction and sentence.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Hearold*, 603 So. 2d 731 (La. 1992); *State v. Smith*, 47,983 (La. App. 2 Cir. 5/15/13), 116 So. 3d 884. This standard does not provide an appellate court with a vehicle for substituting its appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Robertson*, 96-1048 (La. 10/4/96), 680 So. 2d 1165.

The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d

6

62 (2000). A reviewing court may not impinge on the fact finder's discretion unless it is necessary to guarantee the fundamental due process of law. *Id.* The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Gilliam*, 36,118 (La. App. 2 Cir. 8/30/02), 827 So. 2d 508, *writ denied*, 02-3090 (La. 11/14/03), 858 So. 2d 422.

Thus, in order for Mr. Young's conviction to be upheld, the record must establish that the state proved beyond a reasonable doubt all of the essential elements of aggravated flight from an officer. La. R.S. 14:108.1 defines aggravated flight from an officer, in pertinent part, as follows:

> C. Aggravated flight from an officer is the intentional refusal of a driver to bring a vehicle to a stop [...], under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver or operator has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle [...].
>
> D. Circumstances wherein human life is endangered shall be any situation where the operator of the fleeing vehicle [...] commits at least two of the following acts:
>
> (1) Leaves the roadway or forces another vehicle to leave the roadway.
>
> (2) Collides with another vehicle or watercraft.
>
> (3) Exceeds the posted speed limit by at least twenty-five miles per hour.
>
> (4) Travels against the flow of traffic [...].
>
> (5) Fails to obey a stop sign or a yield sign.
>
> (6) Fails to obey a traffic control signal device.

E. (1) Whoever commits aggravated flight from an officer shall be imprisoned at hard labor for not more than five years and may be fined not more than two thousand dollars.

Mr. Young does not contest the state's proof that the driver of the vehicle intentionally refused to bring the vehicle to a stop under circumstances wherein human life was endangered or that the driver of the vehicle knew that he had been given a visual and audible signal to stop by a police officer activating emergency lights and siren on a marked police vehicle. Instead, he only contests the state's proof that the officer had reasonable grounds to believe that the driver had committed an offense and the state's proof that he was the individual driving the vehicle.

For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity occurred or is about to occur before stopping the vehicle. *State v. Hunt*, 09-1589 (La. 12/1/09), 25 So. 3d 746. When an officer observes what he objectively believes is a traffic offense, the decision to stop the vehicle is reasonable, regardless of the officer's subjective motivation. *Id*.

Sgt. Brice testified at trial that he observed Mr. Young's vehicle turn from Peach Street onto David Raines Road without using a turn signal. Sgt. Brice stated that he was turning his police vehicle around in front of the Peach Street Apartments at the time he observed the traffic violation. Although Sgt. Brice had begun turning his police cruiser around because he was unsure if Mr. Young was wearing a seatbelt, Sgt. Brice testified that he initiated the stop solely based upon Mr. Young's failure to use a turn signal. Beginning to turn a police vehicle around does not constitute an investigatory stop within the meaning of La. R.S. 14:108.1 because it does not give a visual or audible signal to a driver to stop their vehicle.

8

The stop was initiated once Sgt. Brice activated his lights and sirens, which he only activated after observing Mr. Young's vehicle turn without using a turn signal.

Sgt. Brice's testimony about observing the vehicle turn without using a turn signal satisfies the requirements of La. R.S. 14:108.1. Turning a vehicle without giving a signal of the intention to turn is a traffic violation pursuant to La. R.S. 32:104. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Burd*, 40,480 (La. App. 2 Cir. 1/27/06), 921 So. 2d 219, *writ denied*, 06-1083 (La. 11/9/06), 941 So. 2d 35. Sgt. Brice clearly testified that he observed a traffic offense and provided a reasonable explanation for why the traffic offense had not been recorded by his vehicle's dashboard camera. The jury determined that he was credible. We will not reassess that determination. Sgt. Brice had reasonable grounds to believe that the driver of the vehicle had committed a traffic offense.

Mr. Young also argues that the state failed to prove he was driving the car because neither Sgt. Brice nor Det. Robalo saw the face of the person who exited from the driver's side of the vehicle. Such specific testimony, however, was not required in order to prove that Mr. Young was the driver.

Det. Robalo testified that he saw the person who exited the driver's side of the vehicle. He then chased, apprehended, and held down that person until another officer secured him with handcuffs. At trial, Det. Robalo identified Mr. Young as the person whom he apprehended. If Det. Robalo apprehended the person who exited from the driver's side of the vehicle, and

9

if the person apprehended by Det. Robalo was Mr. Young, then logic dictates that the person who exited from the driver's side of the vehicle was Mr. Young.

No evidence introduced at trial suggested that Det. Robalo ever lost sight of the driver between the time the driver exited the vehicle and the time he was apprehended. Moreover, the vehicle's passenger was described as carrying a backpack and was observed fleeing in a completely different direction. Mr. Young's contention that someone else could have been driving the vehicle is unsupported by the record in this case.

The jury found Det. Robalo's identification of Mr. Young as the driver of the vehicle to be credible. We decline to disturb that credibility determination on appeal.

Viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have found that the state presented sufficient evidence at trial to establish the essential elements of aggravated flight from an officer. We find, therefore, that Mr. Young's assignment of error lacks merit.

## CONCLUSION

For the reasons expressed, the conviction and sentence of Mr. Young are affirmed.

**AFFIRMED.**